## The State v. Hultz, *Appellant.*

### DIVISION TWO.

1. **Criminal Practice: ELISORS: STATUTE.** The trial court may, under Revised Statutes, 1889, section 3244, appoint elisors to summon a jury in a criminal case on the application of the prosecuting attorney, verified by his affidavit based on the grounds, that the sheriff and coroner were biased and prejudiced in favor of the defendant.

2. ———— : ———— : ————. The character and form of the evidence to authorize the appointment of the elisors rests in the discretion of the trial court, and its action will not be disturbed in the absence of evidence showing it to have been arbitrary and unjust.

3. ———— : SELECTION OF JURY. Where the examination of a juror on his *voir dire* discloses that he was a competent juror, and the record proper shows that he was so accepted by the court, and he was not challenged, an entry in the stenographer's notes of the evidence, and copied into the bill of exceptions, directing the juror "to stand aside" will be disregarded as having been inadvertently made.

4. ———— : COMPETENCY OF JURORS. One who has heard the evidence given on the preliminary examination on a charge of a felony, and read the report in a local newspaper and formed an opinion therefrom, is not a competent juror.

5. ———— : EVIDENCE: HARMLESS ERROR. A refusal to permit the defendant charged with murder to testify as to his intention in firing the fatal shot will not cause a reversal, where it appears such refusal did not injure the defendant.

6. ———— : SEPARATION OF JURY. The objection that the jurors in a murder trial were permitted to attend a public lecture will not be considered in the supreme court, where there is nothing in the record to show such alleged fact.

*Appeal from Boone Circuit Court.*—Hon. G. H. BURCKHARTT, Judge.

AFFIRMED.

At the October term of the Boone circuit court, 1888, the grand jury returned an indictment against Marshall J. Hultz, for murder in the first degree for the killing of Allen Vawter in said county on the seventh of May,

The State v. Hultz.

1888.   At this same term, defendant filed and made his application for a change of venue from Boone county on account of the prejudice of the inhabitants of said county against him.   This application was overruled by the court.

At the April term, 1889, when the cause was reached, and after both state and defendant had announced ready for trial, the counsel for the state, without notice to defendant, filed a motion to set aside the sheriff of the county, and the coroner of the county, and appoint elisors to act in their stead in summoning the jury, and performing all other duties of the sheriff during the trial.   This application is as follows:

" STATE OF MISSOURI,
            Plaintiff,
      *vs.*
" MARSHALL J. HULTZ,
            Defendant.

"The state comes by her attorney, and moves the court for an order appointing one or more impartial persons to act as elisors in summoning the special venire ordered in this cause, and to do and perform all other functions and duties devolved upon the sheriff in the further conduct of the trial thereof, for the reasons following :   Because said sheriff and coroner are unduly biased and prejudiced in favor of the defendant in the cause, and will not for said reason impartially summon the venire ordered and return an unbiased and impartial persons thereon, or execute [impartially the other duties involved in the trial of said cause.

      "[ Signed ]                    C. H. GORDON.

" C. H. Gordon, prosecuting attorney for the state, makes oath and says he believes the matters and facts as set out in the foregoing motion are true.

      "[ Signed ]          C. H. GORDON.

"Subscribed and sworn to me before this nineteenth day of April, 1889.

      "[ Signed ]                    J. W. STONE,
                              " Clerk."

Instantly on the filing of said motion, the defendant objected to the motion and affidavit, as being insufficient in itself alone to authorize the court to set aside said officers, or either of them, and to appoint other persons to exercise their official functions. And thereupon the court announced its decision to be that said motion and affidavit were sufficient, and that it was, by reason of the filing thereof, the duty of the court to set aside said officers, and the deputies of the sheriff also, and to appoint two or more elisors as therein prayed, and accordingly appointed W. I. Roberts and M. L. Edwards to act as elisors in said cause, which they proceeded to do, to which action of the court the defendant at the time objected and saved his exceptions.

On the list of the panel of forty jurors as finally selected is the name of J. T. Rowland. Counsel for defendant make the point that when this juror was examined on his *voir dire* that the court ordered him to "stand aside," but he remained in the box, and his name was improperly left on the panel. On his *voir dire* this juror answered that he had not formed or expressed any opinion as to the guilt or innocence of the defendant ; was not related to defendant or deceased ; had no conscientious scruples against the death penalty ; was not on the grand jury that found the indictment, and was not a witness in the case.

On the cross-examination said he had read an account of the killing in the county papers, but formed no opinion from what he read ; did not read the evidence taken at the preliminary trial. The stenographer reports the counsel for defendant, Mr. Turner, as saying. "Your Honor, I think this excludes him." "The court : ' Stand aside.' " When the panel was completed defendant, by his counsel, moved to quash the panel, on the ground that the court improperly set aside the sheriff and his deputies and the coroner, and appointing the elisors and holding that the "*ex parte*" affidavit of the prosecuting attorney was of itself sufficient to set

aside the duly-elected sheriff. This motion was over-ruled, and defendant excepted.

During the trial defendant was sworn as a witness in his own behalf, and among other things his counsel asked him this question: "Now, Mr. Hultz, state to the jury what your intent or purpose was in firing that pistol at Mr. Vawter." To which the state objected, and the objection was sustained by the court, to which action of the court, defendant at the time duly excepted.

R. B. Akeman who was summoned as a juror stated on his *voir dire* examination, as to his qualification to sit as a juror, that he had heard a part of the preliminary trial, and afterwards had a full account of the tragedy, and, also, a report of the evidence on that trial in a local newspaper, the Columbia *Herald;* that he had formed, but had not expressed, an opinion ; that he could hear the evidence and render a verdict unbiased ; that he could discard his former opinion. The court refused to except him as a juror, and defendant excepted.

*Squire Turner* and *I. W. Boulware* for appellant.

(1) Defendant was entitled to a change of venue. R. S. 1879, sec. 1859. (2) It was reversible error to remove the sheriff and coroner, and to appoint the elisors. No testimony was offered to prove the alleged prejudice of the sheriff and coroner. When a ministerial officer is chosen and qualified according to law, all the presumptions both of law and fact favor the integrity and fidelity of such officer, and these presumptions must continue until they are overcome, not by mere allegation, which may itself be inspired by prejudice ; but by competent proofs to the contrary. The counsel of defendant, at the filing of the motion, insisted that the court should treat the allegation as issuable and avowed readiness to offer countervailing proofs. The affidavits of the sheriff, his deputies and coroner afterwards filed, along with the motion for a

new trial, show that this avowal of counsel was sincere in purpose and true in fact. The allegation of prejudice and bias stands upon this record as a bare assertion wholly unsupported by any proof whatsoever, whilst the non-existence of such bias or prejudice stands upon the same record established by clear and convincing evidence. *State v. Smith*, 90 Mo. 30; Thompson and Merriam on Juries, 115 ; *State v. Newhause*, 29 La. Ann. 824; *State v. John Matthews*, 98 Mo. 119. ( 3 ) The defendant was entitled under the statute ( R. S. 1879, sec. 1903, to a full panel of forty qualified jurors, before he could be compelled to make his peremptory challenges. *State v. McCarren*, 51 Mo. 27 ; *State v. Waters*, 62 Mo. 196 ; *State v. Davis*, 66 Mo. 684 ; *State v. Culler*, 82 Mo. 623–6. The list furnished the defendant did not contain the names of forty qualified jurors. The list contained the name of J. M. Rowland, whom the record fails to show was either summoned as a juror or examined as to his qualifications. The list also has the name of J. T. Rowland, who the record shows was passed on by the court and pronounced not competent or qualified. Defendant at the time objected to the list. Defendant did not waive his right to a list of the requisite number of qualified jurors. *State v. McCarren*, 51 Mo. 27 ; *State v. Waters*, 62 Mo. 196 ; *State v. Robertson*, 71 Mo. 146. ( 4 ) R. B. Akeman, who was summoned as a juror, stated on his examination as to his qualifications, that he heard a part of the preliminary trial and afterwards had a full account of the tragedy, and also a report of the evidence on that trial in a local newspaper, the Columbia *Herald*. Had never read or heard any testimony for the defense ; that he had formed, but not expressed, an opinion ; that he could hear the evidence and render a verdict unbiased and unprejudiced on account of the opinion ; that, in discharging his duty, his mind was not, nor would not, be affected by his former opinion. The court discharged him as unqualified, against objections of defendant. Was he not a

qualified juror under the rulings and decisions of this court? *State v. Walton*, 74 Mo. 270, and cases cited. (5) The defendant had the right to state as a witness with what intent, purpose and motive he fired the fatal shot. Where intent is a material issue defendant can testify in reference to his motive. *Nichols v. Winfrey*, 79 Mo. 544; *State v. Banks*, 73 Mo. 592-596; *Vansickle v. Brown*, 68 Mo. 627; *McKowan v. Hunter*, 30 N. Y. 625; *Kerrains v. People*, 60 N. Y. 221. (6) The trial court committed gross error in allowing the jury of twelve, after they had been sworn to try the case, heard much of the evidence, and during the progress of the trial, without the consent of the defendant, to go to a public hall—opera house—at night, in a large miscellaneous crowd, and listen to one Rev. Sam Jones deliver a lecture on the subject, "Get there." The statute provides as follows · "With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial, in all cases of felony, except in capital cases. * * *" R. S. 1879, sec. 1909. The consent of the defendant would not have justified or legalized this act of the court. *State v. Collins*, 81 Mo. 652.

*John M. Wood*, Attorney General, and *Odon Guitar* for the State.

(1) The granting or refusing a change of venue was within the sound discretion of the trial court; there is no pretense that such discretion was abused. On the contrary, its action was in accord with the weight of testimony adduced on the hearing of the application, and fully sustained by the after results developed on the trial of the cause in the selection of the jury. (2) It was within the discretion of the lower court to appoint elisors to summon the venire, and execute process in the cause, upon its own motion, or the motion and

affidavit of the prosecuting attorney—the law prescribing no form of application, and no other proof. Under our system of "criminal judicature," the most exalted and delicate function devolved upon the "trial judge" is the exercise of that "wise, discretionary power" called in play during the progress of a trial, and which to be of value can be limited only by "good faith" and a just regard for the rights of the public and the accused. Hence the law-makers felt it wise to leave the "judicial mind" untrammeled, subjecting its action to review only when "such discretionary power" has been abused, or the party complaining injured, or his rights prejudiced in its exercise, which is not pretended in the case at bar, as the integrity and fairness of the elisors in the administration of the functions imposed on them is not questioned. We think, with appellant's counsel, that the case of *State v. Leabo*, 89 Mo. 247, is "eminently in point, and that the reasoning of the court is sound and conclusive." R. S. 1879, sec. 1038; Sess. Acts, 1883, p. 57. ( 3 ) No error was committed with reference to the juror, J. T. Rowland. He was a competent juror. *State v. Elkins*, 101 Mo. 344. ( 4 ) Nor was there any error on the part of the court in deciding R. B. Akeman to be an incompetent juror. R. S. 1879, sec. 1897. ( 5 ) The refusal of the court to permit the defendant to testify as to the intent with which he fired the fatal shot does not constitute reversible error. The record shows that the defendant was permitted to testify without let or hindrance to every fact and circumstance remotely or proximately connected with the killing, including the purpose with which he shot and the part of the body at which he aimed. 3 Greenleaf Ev., secs. 13, 14; *York's Case*, 9 Met. (Mass.) 103; *State v. Musick*, 101 Mo. 260; *White v. Maxcy*, 64 Mo. 552; *State v. Gonce*, 87 Mo. 627. "If a person does an act which the law prohibits, it is no defense to believe he had a right to do the act. *U. S. v. Anthony*, 2 Green's Crim. Law Rep. 208, and note. ( 6 ) There is

nothing in the record showing the separation of the jury.

GANTT, P. J.—The defendant was indicted for murder in the first degree at the October term, 1888, of the Boone county circuit court. He was tried at the April term, 1889, and convicted of murder in the second degree, and his sentence fixed at ten years in the penitentiary. The errors assigned are, principally, that the court erred in setting aside the sheriff and coroner of the county and appointing two citizens of the county elisors to summon the jury and perform all the other acts, incumbent upon the sheriff in the trial of the cause; in permitting J. T. Rowland to serve on the jury of forty, and on the panel of twelve finally selected; in refusing to permit Akeman to serve as juror; refusing to permit the defendant to answer the question put to him by his counsel to state his purpose or intent in shooting the deceased, Vawter, and in permitting the jury to attend in the charge of the sheriff the lecture of Rev. Sam Jones, on the subject, " *Get there.*" Considering these in the order in which they occurred, and appear in the record, we will first inquire into the propriety of the court's ruling in appointing elisors in lieu of the sheriff and coroner.

The power to appoint elisors to select the jury where the sheriff was party to the suit or was of kin to the parties, or was prejudiced, was well settled at the common law. Bacon's Abridgment, title Juries "E," *et seq.* The authority given our courts to appoint elisors is found in section 1038, Revised Statutes, 1879, section 3244, Revised Statutes, 1889, and is as follows: "Where there is no sheriff or other ministerial officer qualified to act or where they are interested or *prejudiced* the *court* * * * may appoint one or more persons to execute its process and perform any other duty of such officer, who shall be entitled to such fees for their services in each cause as are allowed by law to sheriffs in like cases."

The contention of the defendant is that the court committed error in not requiring *more* evidence of the partiality and prejudice of the sheriff and coroner than the affidavit of the prosecuting attorney. It would seem that under our system of government, where the people elect their own officers, that no duly chosen officer ought to be deprived of his office save for the gravest reasons. This is true, because the people have reserved to themselves the right to name their officials and have not, save in exceptional cases, left to any one man the power of selecting them, and after a man is duly elected to an office he is entitled to its honors and emoluments, and, when a citizen is to be deprived of his life or liberty, one of his safeguards is that it can be done only by an officer duly elected, and who is under the obligation of his oath of office and a sense of responsibility to the public which elected him. On the other hand, the common law recognized that it would often happen that the sheriff or other ministerial officer of the court would be related to the parties to a suit or be himself interested in the suit, or be by reason of his prejudice or bias an unfit person to select a jury; and as it was of the highest importance that the jury should be free from all suspicion of unfairness or prejudice it could not be tolerated that an interested or prejudiced official, who by reason of his position might insidiously poison the jury in favor of one, and against the other, suitor, should have the power of selection of the jury, the courts invariably asserted the right upon a proper showing to appoint elisors.

The statute does not prescribe how the court shall ascertain the prejudice of the sheriff, but it is left to the discretion of the court in what form the evidence shall be presented, and of course it is for the court to say when it is satisfied. In this case the court was satisfied with the affidavit of the prosecuting attorney. It must be borne in mind that the "*nisi prius*" judge lives in the circuit in which he presides. He knows his

prosecuting attorneys, and his sheriffs. He might be satisfied as courts often are, by the unsworn statement of a reputable law.yer or officer of his court, whereas he might not be willing to accept the sworn statement of many others. These matters must be delegated to some one, and the law has confided it to the circuit judge. Of course, his action is subject to review, if it shall appear arbitrary and unjust; but in this case no suggestion is made that the elisors were not suitable and discreet persons, nor is there any charge preferred that any juror summoned was selected through partiality or prejudice of the elisors, or were themselves unfit to serve as jurors. The whole question is narrowed down to the one consideration that it was error to set aside the sheriff and coroner, and that the law will presume injury resulted to the defendant. But it cannot be maintained that where the law, as in this case, vests the discretion in the court, that because it does not require a certain kind and quality of evidence to establish a fact, that his act is necessarily arbitrary and wrong. While it is generally understood that a judge should know nothing until it is brought to his attention according to the mode of procedure adopted for the government of his court, yet much deference is shown the trial courts because of their familiarity with the witnesses and jurors and suitors with whom they are brought in contact.

Section 4156 provides for changes of venue in criminal cases and for the supporting affidavits, but it also declares that if the facts "*be within the knowledge* of the court or judge he may order the change *without any formal proof.*" The taking of testimony in the form of affidavits is not unusual or extraordinary. Changes of venue are awarded upon affidavit alone ; continuances are granted daily upon this form of proof; chancery causes were originally heard in this way, almost wholly, and, upon consideration, it may be the learned judge wisely concluded that less prejudice

would result to this defendant by determining this application in this manner than by a hearing of witnesses orally. It will be observed that defendant made no offer of evidence to contradict the affidavit at the time, but contented himself with insisting that it was not sufficient. That, then, was the only question before the court. His conscience and his judgment were to be satisfied, and he resolved in favor of the motion. Discretion, when applied to public functionaries, has been defined to be "a power or right conferred upon them by law of acting officially in certain circumstances according to the dictates of their own consciences uncontrolled by the judgment or conscience of others." "Whenever a clear and well-defined rule has been adopted, not depending upon circumstances, the court has parted with its discretion as a rule of judgment. Discretion may be, and is to a very great extent, regulated by usage or by principles, which courts have learned by experience will, when applied to the great majority of cases, best promote the ends of justice, but it is still left to the courts to determine whether a case is exactly like in every color, circumstance and feature to those upon which the usage or principle is founded, or in which it has been applied."

This court in *State v. Leabo*, 89 Mo. 247, held that it was in the discretion of the circuit court to set aside the sheriff or not as the case appeared to him. We do not think there is anything in this record that shows that the distinguished judge, who tried this cause and who gave so many years of his life to an intelligent service of this state, was governed by any other than the purest motives and a wise discretion, and we accordingly hold there was no error in his ruling on this point.

The action of the court in refusing to grant the change of venue is assigned as error, but the evidence fully justifies the circuit court in refusing it.

The bill of exceptions discloses that, when the court was impaneling the jury, J. T. Rowland was

examined on his *voir dire*. As will appear from the statement accompanying this opinion, he was competent by all the decisions of this court, but it also appears that the defendant's counsel made the point that he was not, and the stenographer reports the learned judge as saying "stand aside," the usual formula for rejecting a juror. The record, however, discloses that when the challenges were all completed this man, Joshua T. Rowland, was one of the forty jurors found by the court competent to try the cause. His name was recorded upon the record of the court as one of those accepted by the court; his name was entered by the clerk upon the list handed the defendant upon which he should make his challenges; he was not challenged. The attention of the court was in no way directed to what the defendant now claims was its action. After all the challenges were exhausted by state and defendant, Joshua T. Rowland was left as one of the twelve jurors. Still the defendant nor his counsel made any suggestion that he had been rejected. The court by its record solemnly finds he is a competent juror; his *voir dire* discloses he was competent; no challenge is made though every opportunity is given to see and know that he is one of the jury.

Over against all of this unambiguous record of the court's understanding, stands the two words "stand aside" found in the stenographer's notes. Evidently, the juror did not hear the order or understand it, because it would be presuming too much to suppose that any citizen would knowingly put himself in contempt of the order of the court. As it is, it is left to us to interpret the record as we find it, and we conclude there is but one construction consistent with experience, reason and common sense, and that is, that the stenographer inadvertently put the words "stand aside" in the mouth of the judge. To find otherwise would be to contradict a clear, explicit statement of the record proper, that was open to objection and correction; it

would go far to show the judge, one of the oldest and ablest that ever graced the bench of the state, was ignorant of the ordinary qualifications of a juror; and incidentally it might convict counsel of knowingly dealing unfairly with the court, and their high standing forbids any such suggestion. So we think it is evident they have found this fact in the bill when they come to make out their exceptions. The objection to the juror Rowland must be overruled.

It is next contended that the juror Akeman was competent and the court improperly excluded him. This juror on his *voir dire* stated he had heard the evidence on the preliminary trial; read a report of the evidence in a local newspaper and had formed an opinion therefrom. He was incompetent, and the court properly so held. His opinion was not based on mere rumor or newspaper report. It was founded on sworn testimony. Liberal as our statute is, it is not intended to have for jurors those who have heard the evidence and formed their opinion on that. It is very different from one hearing a rumor or reading a mere newspaper account and feeling that he is free to judge upon sworn testimony. "Where the venire man has formed an opinion, either from his own knowledge or from conversing with witnesses to the transaction, or from having heard their testimony on the trial of the cause, he is subject to be challenged for cause." *State v. Walton*, 74 Mo. 270.

Again defendant urges that the judgment ought to be reversed because the court refused to let him state with what intent and purpose he fired the pistol at Vawter, the deceased. There can be no doubt that under our practice the defendant had the right to testify to every fact and circumstance connected with the difficulty between himself and deceased, and to every circumstance and fact that tended to throw light upon the movements and motives or the parties to this tragedy on the day of the fatal meeting.

There can be no such thing as a felony without a criminal intent. It is the intention with which an act is done that stamps it as lawful or criminal. "In considering whether a defendant charged with doing a certain act did so with a criminal intent, his prior and accompanying *acts* are all to be considered." *State v. Musick*, 101 Mo. 260. Now in this case, the defendant himself went on the stand voluntarily and testified to three distinct shots that he fired at deceased. He gave a minute account of his meeting deceased on their way home from Columbia ; of the conversation that ensued ; of the beginning of the difficulty ; of deceased's effort to strike or cut him; of his drawing his revolver and *his aim to hit him under* the shoulder ; he testified "he was not shooting at random ; was not shooting for fun ; that he was shooting *at him.*" There can be no pretense then that it was anything but an intentional shooting with a deadly weapon at a vital part. There was nothing *accidental* about it.

What answer could defendant have made that would have benefited him. He could not have said, he did not intend to hit deceased. He had already sworn he shot three times with the intention of hitting him. What then? He might have sworn he did it in self-defense ; admit he would have done so, could it have added anything to the detailed account of the meeting in which he had made the deceased the aggressor throughout. If the jury believed his evidence they must have found he acted in self-defense, and if he did he had a perfect right to shoot deceased and shoot with a purpose of killing him ; but his simple declaration that this was his sole purpose could not have added anything to the facts already detailed. The court might very properly have permitted him to answer the question, but its refusal where no harm can result will not justify a reversal of this cause.

In regard to the complaint that the jury were permitted to go in charge of the elisors, and hear Rev. Sam

Jones' lecture, there is not a word of evidence in the record showing or tending to show they did anything of the kind. This is an appellate court, and we cannot review matters not in the record.

The learned counsel in their brief have complained in general terms of the instructions. They have not pointed out any particular instruction that was erroneous, but in a general way they assert these instructions invade the province of the jury, in that they comment on the testimony. We have read all of the instructions. They present a clear and fair statement of the law of the case, and are just to the defendant. We find no error in the record and it follows the judgment of the Boone circuit court must be affirmed. All concur.