[Civ. Nos. 10792–10796. Second Appellate District, Division One.—February 3, 1937.]

BERTHOLD M. J. CONLIN, Respondent, v. WILLIAM R. COYNE et al., Appellants.

Pacht, Turnbull, Pelton & Warne, Halverson & Halverson, Isaac Pacht, Pacht, Pelton, Warne & Black, and Lazare F. Bernhard for Appellants.

Harry K. Sargent and Malcolm Archbald for Respondent.

SHINN, J., *pro tem.*—Plaintiff had judgment for damages resulting from the caving of plaintiff's land into an excava-

tion made by defendants upon their land, by reason of which excavation plaintiff's land was deprived of lateral support. Before us are two appeals, which we shall consider in a single opinion, one an appeal by defendants from the judgment, and the other an appeal from an order denying their motion for new trial, made under section 953e of the Code of Civil Procedure.

The ground of the motion for new trial was that defendants were unable to obtain a complete transcript of the testimony and other proceedings at the trial on account of the death of the court reporter. We have held that the order denying the motion made on that ground was appealable. (*Conlin* v. *Coyne*, 15 Cal. App. (2d) 569 [59 Pac. (2d) 884].)

Section 953e of the Code of Civil Procedure provides that the court may grant a new trial when it shall be unable to obtain a phonographic report of the trial because of the death or other disability of the reporter. A new trial is not given as a matter of right by the terms of the section, but the disposition of a motion made upon that ground rests in the discretion of the court. In the instant case there was no abuse of discretion.

In an affidavit of one of defendants' counsel (not of present counsel) used on the motion for new trial under section 953e of the Code of Civil Procedure, it was stated as follows: "That by virtue of the destruction of the original file in the office of the County Clerk, and by further reason of the death of said reporter and the inability to secure a reporter's transcript, it is impossible for defendants to prosecute in any manner whatsoever the Appeal heretofore taken. . . . That the destruction of the file as above-described, prevents Defendants from being able to present to the Appellate Court, instructions which were requested and refused, and instructions which were requested by plaintiffs and given. That neither Affiant nor other Counsel for Defendants are able to state the contents of the instructions which were given at the time of the trial." It was stated in another affidavit "that because of the inability to secure a reporter's transcript, due to the death of the reporter, and also because of the destruction of the original file, it is absolutely impossible for affiant to go before the Appellate Court on any record but the Clerk's Transcript". It appeared by other affidavits used by defendants that defendants had paid to the court reporter for

a transcript $200, and that 655 folios of transcript had been transcribed upon order of the defendants.

Had the plight of defendants been as desperate as was pictured by the sweeping generalities of the affidavits, and had the despairing views of their then counsel been substantiated by definite and positive statements of fact, a denial of their motion for a new trial would have seemed most unjust. But we are inclined to the belief that they adopted a hopeless view of the situation from choice rather than from necessity. Six hundred fifty-five folios of transcript were available for their use. What proportion of the total record did this represent; to what issues did the missing portions relate; had the instructions themselves been destroyed, and were there no copies which could have been used in place of the originals; were there offers of testimony which were refused in addition to those specifically referred to in the affidavits, and if there were such, why could they not have been stated without recourse to the reporter's transcript? These questions find no answers in the general statements of the affidavits, nor does a careful reading of the affidavits disclose that a sufficient record could not have been made up without a complete transcript of the proceedings at the trial. No effort appears to have been made to prepare a record by bill of exceptions prior to the application for a new trial. The trial judge evidently was of the opinion that such a bill of exceptions could be formulated. Opposing counsel were not shown to be unwilling to lend their assistance to the court in the matter. The trial judge was there to aid in the settlement of a sufficient and proper bill of exceptions and that is an ancient and approved method of presenting a record on appeal. Counsel merely assumed that it could not be done, but aside from the expressions of their belief in the matter, they made no showing that it was impossible or impracticable to do it. As a general rule, and quite contrary to the views of counsel who made the motion, it is quite unnecessary to have all of the testimony incorporated in a record on appeal. If it was necessary in this case the affidavits did not show the necessity. There can be no doubt whatever that inability to obtain a transcript of the trial proceedings would in some cases present an insurmountable obstacle to the preparation of a proper record, but a very wide discretion must be accorded

the trial judge in determining what can and what cannot be done in this respect where a complete transcript is not available. It is the duty of the judge to settle a fair bill of exceptions. If this can be done without a complete transcript of the evidence and the proceedings at the trial, a motion for new trial under section 953e should be denied. The matter is largely within the knowledge of the judge and he must exercise his discretion fairly, but unless there is a convincing showing of unfairness it cannot be held that there has been an abuse of discretion. The affidavits, as we have said, stated that defendants could appeal only upon the clerk's transcript and, again, that it was "impossible for defendants to prosecute in any manner whatsoever the Appeal heretofore taken". Evidently the judge believed that he knew better, and in this he was not shown to have been wrong. The generalities and conclusions in the affidavits were entirely insufficient to support the contentions of defendants, especially in view of the fact that the makers of the affidavits were stating that something could not be done which at the time the statements were made had not even been attempted. The ruling of this court must be that no abuse of discretion appears to have been committed in denying the motion for a new trial made under section 953e.

We now pass to a consideration of the appeal from the judgment.

Plaintiff's land was subject to deeds of trust to secure certain promissory notes. ▮ Appellants now urge that any cause of action for damage to the real property was vested in the trustees and not in plaintiff. It will be assumed, since there is no contention to the contrary, that the trust deeds were in the usual form, and that the trustees therein named held title only as security for the respective debts and with powers which are customary in such cases. We are cited to no authority which sustains appellants' position. The point is not referred to in respondent's brief. As the question is presented, the contention of appellants cannot be upheld. The trustor had parted with the legal title for a limited purpose, retaining the right to the possession and use of the land, which he was enjoying at the time the action was filed. He was entitled to reconveyances upon satisfaction of the debts. (Civ. Code, sec. 871.)

The rights of the trustees as to third persons were not different from those of a mortgagee holding legal title as security for a debt. As to those rights, in 4 Kent's Commentaries, fourteenth edition, 159, 160, it is said: "The equity of redemption is considered to be the real and beneficial estate, tantamount to the fee at law; and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law. The courts of law have, also, by gradual and almost insensible progress, adopted these equitable views." And, "Except as against the mortgagee, the mortgagor, while in possession, and before foreclosure, is regarded as the real owner, and a freeholder, with the civil and political rights belonging to that character . . . "

"A mortgagor in possession, before entry by the mortgagee, and especially before condition broken, is to most purposes regarded as owner of the estate. The fee is considered to be in the mortgagee, for all purposes necessary to the security of his debt; but in other respects, and as to strangers, a mortgage is considered merely as a pledge." (*Earle* v. *Hall,* 2 Metc. (Mass.) 353, 356.)

In a note in Ann. Cas. 1913A, at page 652, is found the following statement: "The general rule is that the mortgagor of real estate has, as against third persons, a right of action for injuries to the premises, since as to such persons he is to be regarded as the owner of the property." The cases there found support the text.

In 19 Ruling Case Law, page 342, it is said: "It is the general rule that the mortgagor has, as against third persons, a right of action for injuries to the premises, and this is certainly the case where the security is ample for the debt." (See, also, 1 Jones on Mortgages, 6th ed., chaps. 1, 2 and 3.)

While in California a deed of trust given as security for the payment of a debt is recognized as a conveyance of legal title (*Hodgkins* v. *Wright,* 127 Cal. 688 [60 Pac. 431]; *Sacramento Bank* v. *Alcorn,* 121 Cal. 379 [53 Pac. 813]; *Koch* v. *Briggs,* 14 Cal. 256 [73 Am. Dec. 651]), the cases hold no more than that the power of sale under a trust deed is effective to cut off the trustor's right of redemption and to enable the trustee to convey an absolute title in the due execution of the trust. It is held that such trust deeds are, in effect, mort-

gages with power to sell. As stated in *MacLeod* v. *Moran,* 153 Cal. 97 [94 Pac. 604], "The legal title is conveyed solely for the purpose of security, leaving in the trustor or his successors a legal estate in the property, as against all persons except the trustees and those lawfully claiming under them. (Civ. Code, secs. 865, 866.) Except as to the trustees and those holding under them, the trustor or his successor is treated by our law as the holder of the legal title. (*King* v. *Goetz,* 70 Cal. 236 [11 Pac. 656].) The legal estate thus left in the trustor or his successors entitles them to the possession of the property until their rights have been fully divested by a conveyance made by the trustees in the lawful execution of their trust, and entitles them to exercise all the ordinary incidents of ownership in regard to the property, subject always, of course, to the execution of the trust." In *Bank of Italy etc. Assn.* v. *Bentley,* 217 Cal. 644 [20 Pac. (2d) 940], in holding that suit could not be maintained on a debt secured by trust deed without first exhausting the security, and in comparing trust deeds with mortgages, the court said: "Fundamentally, it cannot be doubted that in both situations the security for an indebtedness is the important and essential thing in the whole transaction. The economic function of the two instruments would seem to be identical. Where there is one and the same object to be accomplished, important rights and duties of the parties should not be made to depend on the more or less accidental form of the security." The powers and duties of the trustees are fixed by the contract and they relate only to the security. To designate the title of the trustees as a legal title does not enlarge the powers conferred upon the trustees by the terms of the deeds of trust. No question arises in this case as to the right of the trustees as against third persons, such as the right to sue for impairment of the value of the security. It was not sought to have the trustees brought in as parties plaintiff and there could have been in this action no adjudication of the interest, if any, which the trustees might have in the amount recovered. Upon the issues which were tried, and as between the parties who were in court, plaintiff was entitled to receive the entire amount of the recovery. There is no merit in the contention that the trustees alone had the right to sue.

█ Defendants rely upon the insufficiency of the evidence to support the verdict. They owned two hillside lots

facing south, at the northeast corner of intersecting streets. Plaintiff's lot was a key lot extending across the rear of both lots owned by defendants. When defendants excavated their easterly lot down to street level they built a retaining wall at the rear where it adjoined plaintiff's lot. Later they excavated the westerly lot and in so doing, as the jury decided, failed to take reasonable precautions to sustain plaintiff's adjoining land, with the result that a shallow wall on plaintiff's property at the division line, together with the earth in proximity therewith, fell into the excavation, which had been carried to a depth of some twenty-five or thirty feet below the level of plaintiff's lot. The natural slope of the land was toward the south and defendants' excavation was on the approximate level of the street south of their land. The argument on this point discusses the facts quite fully and advances numerous theories which, if held controlling, would relieve defendants of responsibility. These we shall discuss briefly. The contention that the north wall of defendants' excavation was left with a slope which insured its safety, and that therefore no negligence was shown, conflicted with testimony given by those skilled in such matters in that locality to the effect that the wall was too precipitous for safety, having a slope approximating forty-five degrees where a thirty-degree angle was required for safety. This testimony is supported by photographic exhibits showing the condition of the bank.

It is contended that the bank caved in as a result of a heavy rainstorm, and it is doubtless true that the rainfall was a contributing cause. The storm was described by defendants' witnesses as an "unprecedented" one. However, while it was of unusual proportions, it was not the first of its kind, and its characterization by the witnesses as "unprecedented" presented their own conclusions and their choice of descriptive phraseology rather than proof of the fact. No evidence was given as to the amount of rainfall which fell during the storm nor as to the time within which it fell. The jury no doubt regarded occasional heavy rainfall as a hazard which should have been anticipated and against which precautions should have been taken to avoid injury such as the one we are considering. If we were to look beyond the testimony in the case to matters of common knowledge our ob-

servations would tend more readily toward an agreement with the views of the jury than toward the contrary.

■ In the building of structures which are to be exposed to the elements, the exercise of due care requires that precautions be taken against storms and floods which reasonably may be anticipated. (*Asher* v. *Pacific Elec. Ry. Co.*, 42 Cal. App. 712 [187 Pac. 976].) Acts of God which are within the rule of law that "no man is responsible for that which no man can control" (Civ. Code, sec. 3526) are those which operate independently of human agency. (*Polack* v. *Pioche*, 35 Cal. 416 [95 Am. Dec. 115] ; *Newman* v. *City of Alhambra*, 179 Cal. 42 [175 Pac. 414].) The jury was required to determine as a fact whether the injury was caused by an act of God, and its conclusion, if reasonably supported by evidence, is conclusive on appeal. (*Holt Mfg. Co.* v. *Thornton*, 136 Cal. 232 [68 Pac. 708] ; *Fererira* v. *Silvey*, 38 Cal. App. 346 [176 Pac. 371].)

■ It is further contended that the concrete wall on plaintiff's land was weakened by the flowing of excessive amounts of water through the drains from the roof of plaintiff's house, due to the obstruction of the drains, which rendered them inadequate to carry the water away and caused its diversion toward the bank. It is argued further that plaintiff's land adjacent to his wall on the north had been filled in with loose earth and that the wall itself had insecure and inadequate footings and had been weakened by an earthquake shock. It is contended also that the bank had been softened by drainage from a cesspool on plaintiff's lot immediately adjacent to the division line. All of these facts are stressed by defendants as showing that plaintiff's own acts and the conditions which he suffered to exist on his property caused or directly contributed to the injury to his land. The argument goes to the weight of the evidence upon these disputed issues, and although the evidence relied on by defendants tends strongly to show that the negligence of defendants was not the sole proximate cause of the injury, nevertheless the evidence and the inferences therefrom were not conclusive. The implied finding of the jury that the facts relied upon by defendants were not a proximate cause of the injury is not unreasonable and therefore is not vulnerable. ■ It is earnestly contended that defendants were under no obligation to fur-

nish lateral support to the wall on plaintiff's land, and with a proper observance by defendants of the requirements of section 832 of the Civil Code that would be true. Defendants were required only to maintain lateral support of the land, and if the cave-in was a result of the weight of the wall, and if plaintiff had sufficient notice of the excavation work under section 832 of the Civil Code, defendants should not have been held responsible in damages. However, plaintiff neither claimed nor was awarded any damage for the loss of his wall, but only damage to the land itself occasioned by the cave-in. The jury was instructed as to the obligations which defendants assumed in making their excavation, and the duty of furnishing support for the wall was not among them, but was definitely excluded. It must be presumed that the jury believed that insufficient lateral support was left for the land itself and that it would have caved in if there had been no wall resting upon it. The evidence on the point presented a clear question of fact for the determination of the jury, and although with reason it might have been held that the weight of the wall was a proximate cause of the injury, the conclusion of the jury that the fact was otherwise is supported by reasonable inferences of fact. We cannot override the finding of the jury that it was in the manner in which the excavation was made by defendants and not one or all of the conditions existing on plaintiff's property which constituted the immediate, efficient cause of the injury. The implied finding that defendants failed to take reasonable precautions to sustain plaintiff's land, based as it is upon reasonable deductions from the evidence, is controlling upon that issue of fact.

 Defendants offered in evidence an ordinance of the city of Los Angeles which required all sewers in the district in which the property involved is located, to be connected with the city sewer system. Upon objection, the evidence was excluded, and this ruling is assigned as error upon the ground that violation of the terms of the ordinance would in itself constitute negligence. Under the facts of the particular case we do not regard the ruling as erroneous. If the seepage from plaintiff's cesspool had caused a saturation of the soil on the bank of the excavation, and if this condition had been a proximate cause of the caving of the bank, defendants would have been entitled to rely upon the fact as a defense to the action. If the cesspool was negligently maintained be-

cause it was maintained unlawfully, proof of the ordinance would have tended to confuse the jury by injecting the element of negligence which was not essential to the defense. It is not, nor could it be, seriously contended that defendants would have been bound to furnish lateral support to plaintiff's land if it had been kept in a state of artificial saturation. In presenting proof in support of their asserted defense, defendants did not have to prove, nor was it necessary that they should have relied upon, negligence of plaintiff in maintaining and using the cesspool. Furthermore, the jury under proper instructions found that the seepage from the cesspool was not a proximate cause of the injury. Proof that the cesspool was used in violation of law would not have altered this finding.

■ The court also excluded evidence that defendants' land had been excavated in part before plaintiff acquired title to his property. It is urged that this ruling was erroneous for the reason that the principal excavation was made at a time when plaintiff did not own the property and that therefore no right of action was lodged in plaintiff. But plaintiff's predecessor could not have sued until the damage occurred, and there can be no doubt that plaintiff alone was entitled to redress for the injury to the land which occurred during his ownership thereof.

■ The point is made that no proof was offered that defendant Myrtle Coyne was one of the owners of the property upon which the excavation was made, and from this fact it is argued that the verdict and judgment should not have held her jointly liable with defendant William R. Coyne. It was alleged in the complaint and not denied by answer that at the time the excavation was made said defendants were the owners of the property. While the excavation work was under the direction of defendant William R. Coyne, it would be quite unreasonable, we believe, to assume that it was done without the knowledge and consent of his co-owner, Myrtle Coyne. It does not appear from the record that the latter disclaimed knowledge of the improvement of the land.

■ Defendants made a motion for a new trial, separate from the one which we have discussed, upon which they urged, among other grounds, that of newly discovered evidence. They relied upon an affidavit of a plumber who, subsequent to the trial, connected the plumbing from plaintiff's residence with the city sewer and in so doing discovered,

as he averred, that the sewage from the residence, because of a broken pipe, had been discharging into the soil behind plaintiff's wall and not into the septic tank maintained on plaintiff's land. It is urged that this evidence was potent to prove that plaintiff's wall was undermined and that the bank was caused to cave by reason of this seepage. The testimony of the witness would, of course, have been relevant to the vital issue in the case, but while it was perhaps stronger than other evidence which tended to prove the identical fact, it was not a new element in the case. We find by reference to the transcript that evidence was introduced by defendants tending to prove that there was seepage from the cesspool and the connecting pipe line which saturated the soil and had a tendency to undermine the wall on plaintiff's land. Under familiar rules the action of the trial judge in denying the motion for a new trial on the ground of newly discovered evidence was not an abuse of discretion and must therefore be sustained.

We have read the instructions proposed by defendants which were refused, as well as those which were given. We do not find that the instructions given were conflicting as defendants contend. While acts of God and actions of the elements were used in the instructions as convertible terms, acts of God were correctly defined, and the jury was clearly instructed that defendants would not be liable for injuries sustained through action of the elements unless their own negligence contributed to such injuries. The jury was correctly instructed as to the matters to which the refused instructions related.

Defendants make the further point that there was no evidence as to damage to the land in an unimproved state, as distinguished from damage to the land improved as it was with a residence, the estimates of damage given by plaintiff's witnesses having related to the value of the improved property after the slide occurred, as compared with its value prior to that time. It is quite apparent, however, that the witnesses in forming their estimates attributed none of the damage to injuries to the building. A fair inference from their testimony is that they placed estimates upon the damage to the land itself far in excess of the amount awarded by the jury, and therefore the finding of the jury as to the amount of the damage is not without substantial support.

The judgment and the order denying defendants' motion for new trial are affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1937, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 1, 1937.