[S. F. No. 16724. In Bank. Dec. 27, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Appellant, v. EDWARD BROWN AND SONS (a Corporation) et al., Respondents.

Hester W. Webb and U. S. Webb for Appellant.

Arthur B. Dunne, Elden C. Friel and Dunne & Dunne for Respondents.

TRAYNOR, J.—A judgment in favor of respondent was entered on November 25, 1939. On January 29, 1940, the court entered its order amending the findings, conclusions, and judgment and denying appellant's motion for a new trial. On February 16, 1940, appellant filed a notice of appeal and a request for a transcript and personally arranged with the stenographic reporter for his compensation. On February 17, 1940, respondent also filed notice of appeal and a request for a transcript. On June 11, 1941, the appellant filed a notice of intention to move for a new trial, and respondent filed a notice of motion to terminate proceedings for preparation of the transcript. On July 19, 1941, the court entered its order denying appellant's motion for new trial and granting respondent's motion to terminate proceedings. The present appeal is from that order.

There can be no criticism of the order insofar as it grants the motion to terminate proceedings. On appellant's own showing at the hearing on the motion, the reporter's health was such as to preclude the possibility of his com-

pleting the transcript. His death thereafter made the preparation of a transcript impossible. (See *Wynecoop* v. *Superior Court*, 17 Cal.2d 657 [111 P.2d 332].)

Appellant's motion for new trial was made pursuant to section 953e of the Code of Civil Procedure and was based upon the impossibility of obtaining a transcript because of the disability of the reporter. It is settled that the trial court has a wide discretion in passing on a motion for new trial under section 953e and that its action thereon must not be disturbed unless it is clearly shown that the trial court abused this discretion. (*Smith* v. *Orange Belt Supply Co.*, 58 Cal.App.2d 848 [137 P.2d 845]; *Moore* v. *Specialty Oil Tool Co.*, 128 Cal.App. 662 [18 P.2d 82]; *Conlin* v. *Coyne*, 19 Cal.App.2d 78 [64 P.2d 1123]; *Kroeker* v. *Jack*, 51 Cal. App.2d 272 [124 P.2d 619]; see *Comey* v. *Comey*, 8 Cal.2d 453 [66 P.2d 148].)

It is not sufficient, as appellant contends, to file a notice of appeal, request a transcript and arrange for compensating the reporter. It is the duty of the appellant to take all necessary steps to insure the prompt filing of a transcript by the reporter. If he is not sufficiently diligent in this regard the trial court may not only deny a motion for new trial under section 953e of the Code of Civil Procedure (*Smith* v. *Orange Belt Supply Co.*, supra; *Moore* v. *Specialty Oil Tool Co.*, supra; *Conlin* v. *Coyne*, supra; *Kroeker* v. *Jack*, supra; see *Comey* v. *Comey*, supra) but may terminate the proceedings for preparation of the transcript. (*Wood* v. *Peterson Farms Co.*, 131 Cal.App. 312 [21 P.2d 468]; *O'Banion* v. *California C. P. Growers*, 109 Cal.App. 328 [292 P. 975]; *Smith* v. *Jaccard*, 20 Cal.App. 280 [128 P. 1023, 1026]; *Davis* v. *Alioto*, 122 Cal.App. 740 [10 P.2d 467]; *Sheriffs* v. *Scott*, 109 Cal.App. 438 [292 P. 1088]; *Clemmens* v. *Clemmens*, 13 Cal.App.2d 651 [57 P.2d 529]; *Shutz* v. *Western etc. Distributors*, 24 Cal.App.2d 659 [76 P.2d 135]; *Western Concrete Pipe Co.* v. *Grabovich*, 118 Cal.App. 367 [5 P.2d 71]; *Taft* v. *Security First Nat. Bank*, 139 Cal.App. 228 [33 P.2d 683]; *Harris* v. *Burt*, 47 Cal.App. 480 [190 P. 1058].) There is ample evidence in the present case to support the trial court's holding that there was undue delay in the preparation of the transcript and that appellant did not exercise the diligence required to guard against the contingency that the reporter would be unable to complete the transcript.

There was no evidence of disability that would have prevented the reporter's preparing the transcript between February 16, 1940, when the appellant filed notice of appeal and request for transcript, and September 15, 1940, when the reporter suffered a heart attack. Appellant seeks to justify the delay on the ground that the reporter was engaged in reporting the case of *Pacific States Savings & Loan Assn.* v. *Evans* and did not have an opportunity to prepare the transcript in the present case. There is no evidence that the reporter could not have prepared the transcript between the date appellant filed his request therefor and the date on which the reporter commenced reporting the Pacific States case. Furthermore, it appears that there were other competent court reporters available at the time, but it is not shown that appellant or his attorney requested the reporter to get another reporter to take his place in the Pacific States case. Moreover, despite this engagement, the reporter had an opportunity to prepare the transcript, for there was a recess in the Pacific States case from April 11, 1940, until July 16, 1940, and there is no evidence to show why he did not prepare it during that period. In any event it is not a valid excuse that the reporter did not have the time, owing to the press of other business, to prepare the transcript. (*O'Banion* v. *California C. P. Growers,* 109 Cal.App. 328, 329 [292 P. 975] ; see *Laumann* v. *Conner,* 12 Cal.App.2d 631 [55 P.2d 1225].) As pointed out in *Harris* v. *Burt,* 47 Cal.App. 480, 482 [190 P. 1058], appellant could have procured the filing of the transcript by making a demand on the reporter to complete it and by securing an order of court or petitioning for writ of mandate to compel him to do so. Appellant did not at any time call the attention of the court to the delay, nor did he take any action to persuade or compel the reporter to prepare the transcript. Instead, he let the matter drift until the reporter became unable to do so. Finally, after the reporter became permanently disabled there was an unexplained delay of over eight months before appellant served and filed his notice of intention to move for a new trial under the provisions of section 953e of the Code of Civil Procedure. Appellant's claim of diligence rests principally upon the fact that his attorney communicated with the reporter's transcriber. What authority the latter had does not appear, but in any event, the appellant, after

learning from these communications of the reporter's inactivity, did nothing to expedite its preparation.

▉ Appellant relies upon the advice given his attorney by the reporter's transcriber that orders extending the time to prepare the transcript had been obtained and all necessary orders further extending time would be obtained by the reporter and the transcriber. From March 7, 1940, when the transcript was due, until June 25, 1941, the reporter's transcriber procured orders from various superior court judges extending the time for the reporter to prepare and file the transcript. Each of these orders was obtained in violation of section 953a of the Code of Civil Procedure, providing that "The stenographic reporter shall not postpone the filing of the transcript except upon order of the court, upon affidavits filed with the court by the reporter, stating facts and not conclusions, which affidavits before any continuance is granted shall be served upon the attorneys appearing in said cause. . . ." No affidavits were ever made, served, or filed, and no notice was ever served on or mailed to respondents or their attorneys. There were, moreover, several periods of time, varying from two or three days to one hundred and twenty-seven days, during which there was no protecting order. Appellant was put on notice that such orders were obtained in violation of section 953a, for his attorney was told that orders were being obtained, but never received any affidavits that are a condition to such orders. Under these circumstances appellant cannot rely on the derelictions of court officers. (See 4 C.J.S. 1374.)

Appellant contends that he had the right to rely upon void orders extending the reporter's time, citing *California Nat. Bank* v. *El Dorado Lime etc. Co.,* 200 Cal. 452 [253 P. 704] and *Lewith* v. *Rehmke,* 217 Cal. 563 [20 P.2d 687], which involved bills of exceptions and relief under section 473 of the Code of Civil Procedure. In the present case there was not only no attempt to obtain relief under section 473 but the time limited by that section expired long before appellant made any application to the court. Moreover, appellant did not rely on any order, for neither party saw the orders until about the date of appellant's motion, and for a considerable part of the time there were no orders, valid or invalid, in effect. ▉ Even if the showing made were sufficient to justify an order denying a motion to terminate pro-

ceedings, had the reporter been able to complete the transcript, it is not sufficient to show an abuse of discretion by the court in denying a motion for new trial. Every presumption favors the fairness and regularity of the proceedings of the trial court leading to the judgment and to the denial of the motion for new trial. There is certainly no abuse of discretion by a trial court in refusing to deprive the respondent of his judgment when the appellant by taking the necessary steps for the prompt filing of the transcript could have avoided the contingency that makes its preparation impossible.

Appellant's contention that the trial court in the basic action erred in construing and applying to the facts of the case the provisions of section 2344 of the Civil Code was not made on the hearing of his motion in the trial court. The affidavit in support of the motion declared that "The legal questions to be determined on appeal depend wholly upon the facts established at the trial, and it is therefore necessary that the reporter's transcript of the trial be had." There was no showing made as to the nature of the testimony, and no indication that there was any merit in an appeal. In the absence of a record showing that section 2344 of the Civil Code was involved on the trial any discussion of that section is inappropriate. (See *Town of St. Helena* v. *Merriam,* 171 Cal. 135, 137 [152 P. 299].)

Appellant contends that since respondents filed a cross-appeal they were as responsible as appellant for the delays in the preparation of the transcript. Appellant, however, was the moving party in the trial court on the present appeal. His failure to take the proper steps to perfect his appeal in the basic action is in no way excused by the failure of respondents to take proper steps to protect their appeal when they are not seeking relief. Each party must act with diligence to perfect his own appeal. (*Dorcy* v. *Brodis,* 153 Cal. 673, 675 [96 P. 278].)

The order appealed from is affirmed.

Gibson, C. J., Curtis, J., and Edmonds, J., concurred.

CARTER, J.—I dissent.

The question, as the majority opinion states, is whether the trial court abused its discretion in refusing to grant appel-

lant a new trial under section 953e of the Code of Civil Procedure upon the ground that the death of the reporter made it impossible to secure a reporter's transcript. In concluding that the record fails to show an abuse of discretion, the majority have, in my opinion, countenanced a procedure and application of the statute which render it meaningless and ineffective.

In January, 1936, in the course of liquidation of Union Indemnity Company, an insolvent Louisiana corporation, this action was instituted by the Insurance Commissioner of this state to recover certain sums for the company from its agent, defendant Edward Brown and Sons, a corporation, and the members of that firm. The defendants answered and also cross-complained, alleging a number of claims for amounts due them from the company. In October, 1938, the cause came to trial on issues joined by amended pleadings, the court by stipulation sitting without a jury. On November 25, 1939, judgment was entered decreeing that plaintiff take nothing, but that defendants recover $39,267.31 on their cross-complaint. On January 29, 1940, a motion for new trial was denied, but the order of denial contained a provision disallowing a $15,000 item to defendants. The findings and conclusions were modified accordingly, and the judgment in favor of defendants was thus reduced to $24,267.31.

On February 16, 1940, plaintiff filed notice of appeal from the judgment as modified, and a request for a transcript. On the following day, February 17th, defendants filed notice of appeal from every part of the judgment adverse to them denying relief prayed for by their cross-complaint and disallowing items claimed, including the $15,000 item which was stricken from the judgment at the time of ruling on the motion for new trial.

On June 11, 1941, plaintiff gave notice of a motion for an order setting aside the judgment and granting a new trial on the ground, among others, that owing to the illness of the court reporter it would be impossible to get a reporter's transcript. An affidavit of counsel filed in support of the motion avers that the following efforts were made to procure the transcript: That at the time of filing the request for a transcript, counsel personally arranged with the official court reporter, who reported the trial, and with his transcriber, for their compensation. In March, 1940, at the request of the

transcriber, counsel went to the city hall and identified the papers which were to be included in the clerk's transcript. She was advised by the transcriber that the reporter was reporting the trial of *Pacific States Savings & Loan Society* v. *Evans* and would be unable to prepare the transcript until he finished that work. She was further advised by the transcriber that orders extending the time of the reporter for preparing the transcript had been obtained, and that all necessary orders would be taken care of by the reporter or his assistants.

Counsel further avers: "Each month thereafter and until October, 1940, I communicated with [the transcriber] and was told by her that [the reporter] was still engaged in the Pacific States case and that court orders extending his time to file the transcript had been obtained and filed."

In October, 1940, affiant was advised by the transcriber that the reporter had suffered a severe heart attack on September 14th and was confined to the hospital and that she was protecting the time for filing the transcript by orders of court.

From time to time thereafter affiant was advised that the reporter was still in the hospital and was unable to carry on any work or even read his mail. In February, 1941, she was advised by the transcriber that the reporter was still very ill and that it might be some time before he could return to work; also that the required court orders were being obtained.

In April, 1941, the transcriber telephoned affiant advising her that because of the reporter's ill health he would be unable to complete the transcript. Affiant relayed this information to opposing counsel by telephone and asked them to arrange with her as to the course to pursue. Thereafter, they did not communicate with her, so in May she telephoned the transcriber. She was advised that the reporter would never be able to complete the transcript and she later learned that he had passed away.

Meanwhile, and on June 5th, she again telephoned opposing counsel and asked them for a stipulation for a new trial. They promised to let her know. However, she learned that the judge who tried the case was coming to town, and so, on June 11th she gave notice of motion to vacate the judgment and for a new trial pursuant to section 953e of the Code of Civil Procedure.

Her affidavit in support of the motion showed, in addition

to the averments already mentioned, that there had been procured through the office of the reporter more than fifteen different court orders extending his time, two of which purported to be retroactive, so that the period of delay was substantially covered by protective orders. However, the orders were defective. No affidavits were served or filed in conformity with the requirement of section 953a of the Code of Civil Procedure that "The stenographic reporter shall not postpone the filing of the transcript except upon order of the court, upon affidavits filed with the court by the reporter, stating facts and not conclusions, which affidavits before any continuance is granted shall be served upon the attorneys appearing in said cause . . . unless the court shall otherwise order, prior to the making of said order of continuance."

On June 11, 1941, defendants gave notice of motion to terminate proceedings for the preparation of a transcript on appeal on the ground of unreasonable delay of plaintiff in procuring a transcript, lack of diligence, and failure of the reporter to serve and file affidavits to support the orders extending time. This notice was supported by an affidavit of defendants' counsel pointing to the expense and inconvenience of a retrial, the prejudicial effect of the delay, and the likelihood that the personal recollections of witnesses would be less distinct with passing time.

Upon a full hearing of plaintiff's motion to vacate the judgment and for a new trial, and defendants' motion to terminate proceedings, the trial court denied plaintiff's motion and granted that of defendants, giving as his reason that although there is no limit on the time within which a reporter may prepare a transcript, nevertheless undue delay may be grounds for refusal to grant a new trial, and that here plaintiff showed a lack of diligence and failed to take proper steps to guard against the contingency which happened, the inability of the reporter to complete the transcript. Plaintiff appealed from this ruling.

In this state the jurisdiction of the court to grant a new trial is limited strictly to the statutory grounds, and as prior to 1931 there was no statute dealing with the effect of death or incapacity of the reporter, a new trial could not be had on that ground. This is contrary to the rule in many jurisdictions where, on death of the reporter, a new trial is granted as a matter of course, or of right. (*Diamond* v. *Superior*

*Court* (1922), 189 Cal. 732 [210 P. 36], and authorities there reviewed; 25 Cal.L.Rev. 114; 107 A.L.R. 603; 16 A.L.R. 1158; 13 A.L.R. 102; *People* v. *Keefe,* 254 App.Div. 683 [3 N.Y.S.2d 473]; *Navarro* v. *State,* 141 Tex.Cr. 196 [147 S.W. 2d 1081]; *Pac. Greyhound* v. *Burgers* (Tex.Civ.App.), 118 S.W.2d 1100; *State* v. *District Ct.,* 107 Mont. 30 [79 P.2d 665]; 39 Am.Jur., p. 199, secs. 201-2.)

In 1931, section 953e was added to the Code of Civil Procedure (Stats. 1931, p. 410). It provided: "When it shall be impossible to have the phonographic report of the trial transcribed by a stenographic reporter as provided by section 953a of this code because of the death or other disability of a reporter who participated as a stenographic reporter at the trial, the court or a judge thereof *shall have power* to set aside and vacate the judgment, order or decree from which an appeal has been or is to be taken and to order a new trial of the action or proceeding."

In the first case construing this statute, its provisions and particularly the phrase "shall have power," were declared to be not mandatory but merely to repose in the trial court a "wide discretion" in the matter of granting or denying new trials on the stated ground (*Moore* v. *Specialty Oil Tool Co.,* 128 Cal.App. 662, 664-5 [18 P.2d 82]). See to the same effect *Conlin* v. *Coyne,* 19 Cal. App. 2d 78 [64 P.2d 1123]; *Comey* v. *Comey,* 8 Cal.2d 453 [66 P.2d 148]; *Kroeker* v. *Jack,* 51 Cal.App.2d 272 [124 P.2d 619]; *Smith* v. *Orange Belt Supply Co.,* 58 Cal.App.2d 848 [137 P.2d 845].

This construction of the statutory language is obviously a sound one, for to put an absolute compulsion upon the trial court to grant a new trial on a mere showing that death or disability of the reporter has made the preparation of the transcript impossible, would be to work a gross injustice in many cases. Every presumption is in favor of the fairness, impartiality, and regularity of the proceedings in the trial court leading to judgment. A verdict or judgment is presumptively right until it is shown to be wrong. Thus to deprive a party of his judgment and the intendments in its support, and to force him to re-establish his claim in every case where there is a mere showing of incapacity or death of the reporter, without any consideration of the facts, of the diligence or lack of diligence shown by the appellant in aiding the timely procurement of a transcript, of the possibility of

agreeing on a bill of exceptions or statement of facts, or of the indications of merit or lack of merit in the appeal, would be just as unfair as to automatically deny a new trial to every appellant who has been deprived of his appeal because of the impossibility of securing a record. (*Diamond* v. *Superior Court, supra; Alley* v. *McCabe*, 147 Ill. 410 [35 N.E. 615]; *Stenographer Cases*, 100 Me. 271 [61 A. 782].) A showing of the death of material witnesses or other exceptional circumstances making it impossible for the prevailing party to prove his case on a re-trial might be considered by a trial judge, in the exercise of a sound discretion, to overbalance the hardship worked on the appellant by deprivation of his appeal on a full record. In some cases denial of relief by way of a new trial has properly been grounded upon a showing that appellant himself obstructed the timely preparation of the transcript. In others an appeal on the judgment roll or upon a bill of exceptions has been found to afford sufficient relief.

But aside from these exceptional cases there will be found a vast number in the ordinary run where the deprivation of an appeal on a full transcript without fault on the part of appellant, but by reason of death or incapacity of the reporter, and the denial of relief by way of a new trial, will work a hardship and injustice too great to be countenanced; cases where the success or failure of the appeal depends wholly upon a complete presentation of the facts established at the trial; cases where the re-trial may be had without material damage by delay to the rights of the respondent; and cases where the showing made in support of the motion for new trial is sufficient to indicate that the appeal may be meritorious, or at least that the points presented by the appeal are such as to entitle the appellant to a hearing on the merits.

The policy of the law is always to favor, wherever possible, a hearing of an appeal on the merits (*California Nat. Bank* v. *El Dorado Lime etc. Co.*, 200 Cal. 452 [253 P. 704]; *Waybright* v. *Anderson*, 200 Cal. 374 [253 P. 148]; *Manning* v. *Gavin*, 14 Cal.2d 44 [92 P.2d 795]; *Wood* v. *Peterson Farms Co.*, 214 Cal. 94 [3 P.2d 922]; *Banta* v. *Siller*, 121 Cal. 414 [53 P. 935]; *Labarthe* v. *McRae*, 35 Cal.App.2d 734 [97 P.2d 251].) It is just as essential that an appellant be protected in his right to have his appeal heard on the merits as that a respondent be given the benefit of the presumptions and intendments supporting his judgment. Morever, a retrial gives

both parties another chance, whereas a denial of it absolutely forecloses the appellant.

There can therefore be no question that section 953e has been properly construed to repose in the trial court a wide discretion in passing upon motions for new trial made on the stated ground. But this discretion, although a "wide" one, is not unlimited, arbitrary, or unrestricted; it must be exercised according to settled rules. In commenting on the danger of investing judges with an unlimited discretion, Lord Camden, one of the greatest and purest of the English jurists, said: "The discretion of a judge is the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends on constitution, temper, and passion. In the best it is often caprice; in the worst it is every vice, folly, and passion to which human nature can be liable." (*State* v. *Cummings,* 36 Mo. 263, 278, 12 Words and Phrases, p. 588.)

Discretion in granting a new trial, has been defined as "an honest attempt, in the exercise by the judge of his duty and power to see that justice is done, to establish a legal right" (*Johnson* v. *Grayson,* 230 Mo. 380 [130 S.W. 673, 676]); it means a "legal discretion to be exercised in discerning the course prescribed by the law, according to principles ascertained by adjudged cases. . . . Judicial power is not exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law" (*Belt* v. *Morris,* 168 Okla. 528 [34 P.2d 581, 584]). It is not capricious, arbitrary, wilful, vague, fanciful, but is legal and regular, directed by reason and conscience. In passing upon a motion for new trial grounded upon the impossibility of securing a reporter's transcript, the court cannot be motivated by his personal inclination to see his own adjudication prevail over appellant's right to have it tested by appeal on the merits. The exercise of the discretion may be, and is to a very great extent, regulated by usage, or by principles which courts have learned by experience will, when applied to the great majority of cases, best promote the ends of justice; but it is still left to the court to determine whether a case is exactly alike in every color, circumstance, and feature to those upon which the usage or principle is founded, or in which it has been applied. (*State* v. *Hultz,* 106 Mo. 41 [16 S.W. 940, 942]; 12 Words and Phrases, pp. 588-591, 603.)

In this state, in defining "discretion," it is said in *Sharon* v. *Sharon*, 75 Cal. 1, 48 [16 P. 345], that "The discretion of the court below is a *legal* discretion, to be reasonably exercised. 'Abuse of discretion' . . . does not necessarily imply a wilful abuse, or intentional wrong. In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered."

It is thus apparent that the peculiar facts and circumstances of each individual case must be carefully considered in determining whether discretion has been properly exercised. In the present case, after reviewing the trial court's ruling in the light of the applicable rules and of all of the circumstances shown by the record, I cannot but conclude that the denial of appellant's motion for new trial was unreasonable and constituted an abuse of discretion.

In initiating his appeal, appellant did all things required of him by statute (Code Civ. Proc., secs. 953a, 953b). Counsel (1) filed notice of appeal; (2) requested preparation of a transcript; (3) arranged to compensate the court reporter; and (4) accompanied the transcriber to the City Hall and identified the papers which were to be included in the clerk's transcript. She then made periodic inquiries as to the progress of the work. Under the circumstances, she stood to gain nothing by unduly harassing the reporter, making formal demand upon him, or trying to force him to transcribe by securing a court order or writ of mandate. No time limit is prescribed for the filing of a transcript (*Hohnemann* v. *Pacific G. & E. Co.*, 31 Cal.App.2d 692, 694 [88 P.2d 748]), and after appellant had taken the initial steps required by statute, the duty rested upon the reporter, who acts as an officer of the court in the performance of his ministerial functions (sec. 269, Code Civ. Proc.; 7 Cal.Jur. sec. 55, p. 653; *Pratt* v. *Browne*, 135 Cal. 649, 653 [67 P. 1082]), to proceed with the work and to secure, if necessary, protective orders extending his time, supported by affidavits properly served and filed (sec. 953a).

In her dealings with the reporter, appellant followed the prevailing custom, and cannot be charged with lack of diligence in relying upon the assurances from the reporter's office that extensions of time were being secured. The transcriber testified that she had been in that work since 1930,

and "that this was the way all extensions had been obtained during that time, and to her knowledge and in her experience she had never presented an affidavit." Another transcriber in the reporter's office asked appellant's counsel from time to time not to "press the matter" or attempt to communicate with the reporter personally, as "he was in such a mental condition that anything might upset him." Up to April, 1941, counsel had no definite information of the seriousness of the reporter's illness. Certainly after appellant's counsel having done all things required by statute on her part to be done, appellant should not be penalized for the dereliction of the court officer.

No request or suggestion was made by respondent that appellant take any action against the reporter. It is doubtful that such action could have been successfully taken in view of the work being done by the reporter on another case which delayed his starting the transcription. There was no duty or obligation on the part of either party to procure the orders extending time. This duty rested solely upon the reporter. It is a matter of common knowledge that in smaller counties having only one reporter, the preparation of transcripts is often delayed for months where the reporter is engaged in reporting other cases or where he has other transcripts to prepare in cases which have been previously appealed, and the practice in such cases is always for the litigants to cooperate with the reporter and not to insist upon his attempting the impossible or requiring him to do more than his endurance will permit. Under such circumstances, if the reporter should die or become disabled, and the trial court should hold that appellant was negligent in not applying for a writ of mandate or taking some other coercive steps to force the preparation of the transcript, the action of the court would be clearly arbitrary and unwarranted and would constitute an abuse of discretion.

Such is the present case, for here, as already stated, the trial court expressly based his denial of a new trial upon the ground that "Diligence is required at all stages of the proceeding unless waived by the opposite party. In the present case it cannot be said that the reporter was diligent in the preparation of the transcript, or that the plaintiff took the proper steps to guard against the contingency which has happened, to wit, the inability of the reporter to complete the

transcript. It does not appear that a sufficient showing has here been made to warrant the setting aside of the judgment and the granting of a new trial. . . .'' (C. T. p. 31.) This shows clearly that the trial court erroneously charged appellant with the court officer's dereliction of duty, and based his ruling on that ground.

The question of whether discretion has been soundly exercised depends, as already stated, in each case upon the particular circumstances. All of the cases cited in the majority opinion are clearly distinguishable from the present case because of differences in the factual situation. In support of the statement, ''In any event it is not a valid excuse that the reporter did not have the time, owing to the press of other business, to prepare the transcript,'' the majority opinion cites three cases (*O'Banion* v. *California C. P. Growers*, 109 Cal.App. 328, 329 [292 P. 975]; *Laumann* v. *Conner*, 12 Cal.App.2d 631 [55 P.2d 1255]; *Harris* v. *Burt*, 47 Cal. App. 480, 482 [190 P. 1058]).

The O'Banion case involved an appeal from an order terminating proceedings. Due to the press of business the reporter *forgot* to prepare the transcript. The court said this was no excuse, but did not say that an impossibility to get the work out due to reporting another case would not be a valid excuse. In the present case appellant's frequent inquiries left the reporter no chance for forgetting the matter.

The Laumann case involved the effect of the reporter's loss of his notes. The trial court was without jurisdiction to grant a new trial because at that time loss of notes was not a statutory ground of new trial. This omission in section 953e has been remedied by a 1943 amendment enlarging its scope. (Stats. 1943, ch. 1017, sec. 1.)

The Harris case involved the dismissal of an appeal. The reporter wrote appellant naming the amount of his fee and stating, ''If you wish me to go ahead with the work, upon prepayment of my fees I will do so promptly.'' Appellant did not reply and the reporter heard nothing until he was informed of the making of the motion to dismiss the appeal because of the appellant's laches in securing a transcript. The appellant's lack of diligence was properly held to support the order of dismissal.

More in line with the situation in the present case is *California Nat. Bank* v. *Lime etc. Co., supra*, where the appellants were relieved from default under the remedial provi-

sions of section 473 of the Code of Civil Procedure, even though they had mistakenly relied upon void orders extending their time for preparation of a bill of exceptions. See, also, *Lewith* v. *Rehmke*, 217 Cal. 563 [20 P.2d 687]. At an early date it was recognized in this state, as in other jurisdictions, that an appellant should not be deprived of his constitutional right of appeal through the fault of officers of the court (*Stark* v. *Barnes* (1852), 2 Cal. 162; *Lovell* v. *Deyoe*, 16 Cal.2d 650 [107 P.2d 385]; *Lovell* v. *Griffin*, 51 Cal.App.2d 322 [124 P.2d 615]). In *Lovell* v. *Deyoe*, dismissal of an appeal for failure to timely file a transcript was denied on the ground that appellant had substantially complied with requirements and the delay was due to the derelictions of officers of the lower court. See, also, *Continental Bldg. & Loan Assn.* v. *Mills*, 44 Neb. 136 [62 N.W. 478-480]; *Sanders* v. *Nightengale*, 109 Neb. 667 [192 N.W. 200-202]; *California Gulch Placer Mining Co.* v. *Patrick*, 37 Idaho 661 [218 P. 378, 379]; *Lipsey* v. *Crosser*, 62 S.D. 160 [252 N.W. 23-25]; *Brinsfield* v. *Mather*, 166 Md. 473 [171 A. 357-359].

The five other cases mainly relied upon in the majority opinion are also distinguishable on the facts. In *Moore* v. *Specialty Oil Tool Co., supra*, it was contended on an appeal on the judgment roll that a new trial should have been granted under section 953e because of the death of the official reporter who had reported a *portion* of the testimony given during the early part of the trial and the inability of the other reporters to read his shorthand notes. A transcript purporting to contain a full and correct record of the proceedings, with the exception of that portion reported by the deceased, was presented to the trial judge. Objections to its certification were sustained (*Specialty Oil Tool Co.* v. *Ames*, 117 Cal.App. 283 [3 P.2d 977]). Thereafter appellant made his motion for new trial under section 953e. In approving the denial of the motion the appellate court said: "In the instant case the trial court had heard all the evidence produced during the trial and upon the evidence thus presented had arrived at a decision. It would be anomalous, at least, to anticipate that the court should arrive at a different result upon a retrial where, so far as appears, the evidence would be identical with that which had theretofore been presented. *Under the circumstances disclosed by the record* we are of the

opinion that no abuse of discretion was committed by the trial court in denying appellant's motion for new trial.''

In *Conlin* v. *Coyne, supra,* as in the Moore case, there was a partial transcript. The reporter died, the file was destroyed, but 655 folios of evidence were available. In affirming the order denying a new trial under section 953e, the appellate court said: ''No effort appears to have been made to prepare a record by bill of exceptions prior to the application for a new trial. The trial judge evidently was of the opinion that such a bill of exceptions could be formulated. Opposing counsel were not shown to be unwilling to lend their assistance to the court in the matter. The trial judge was there to aid in the settlement of a sufficient and proper bill of exceptions and that is an ancient and approved method of presenting a record on appeal. Counsel merely assumed that it could not be done, but aside from the expressions of their belief in the matter, they made no showing that it was impossible or impracticable to do it. As a general rule, and quite contrary to the views of counsel who made the motion, it is quite unnecessary to have all of the testimony incorporated in a record on appeal. If it was necessary in this case the affidavits did not show the necessity. There can be no doubt whatever that inability to obtain a transcript of the trial proceedings would in some cases present an insurmountable obstacle to the preparation of a proper record, but a very wide discretion must be accorded the trial judge in determining what can and what cannot be done in this respect where a complete transcript is not available. . . . The ruling of this court must be that no abuse of discretion appears to have been committed in denying the motion for a new trial under section 953e.''

In *Kroeker* v. *Jack, supra,* the opinion does not detail the facts upon which the exercise of discretion was based but it indicates that the situation was similar to that in *Conlin* v. *Coyne, supra.*

*Smith* v. *Orange Belt Supply Co.,* also presents a situation where a partial transcript was available, and ''It might well be that the 66 folios of testimony which had been transcribed contained evidence sufficient to support the judgment, in which event the untranscribed testimony could only raise a conflict. Nothing is said in the affidavit concerning the nature of the testimony which had been transcribed, and there is no attempt to show that the evidence was in fact insufficient to

support the judgment. While the affidavit alleges that the former counsel for appellant 'is not available' for any assistance in the preparation of a record the showing that no such assistance could have been had by timely effort is not too strong.''

Lastly, *Comey* v. *Comey, supra,* was presented to this court under a procedure known as ''motion to dismiss or affirm'' formerly employed to dispose of appeals which were clearly non-meritorious. The brief opinion states no more than that there was no abuse of discretion.

The present record discloses facts and circumstances entirely different from those of the above cases. Here the trial consumed nine days. The reporter, under pressure of appellant's frequent inquiries, dictated several cylinders. He did this while, as is customary in San Francisco, another reporter was relieving during his off-shift from the case he was reporting. In all, in addition to the clerk's transcript, appellant was able to get from the transcriber only about 188 pages of reporter's transcript, or about two and one-half days of the nine day trial. This was not sufficient to permit of completion of a record in a case of this type, involving as it does a number of separate items in the nature of an accounting, so that it is ''like trying half a dozen separate cases.''

The affidavit of counsel in support of the motion for new trial alleges that ''The legal questions to be determined on appeal depend wholly upon the facts established at the trial, and it is therefore necessary that the reporter's transcript of the trial be had.'' One of the legal questions referred to is stated in appellant's opening brief to be whether the trial court erroneously applied section 2344 of the Civil Code, dealing with the obligation of an agent to surrender property, to the facts of the case. Naturally on a judgment roll appeal, without presentation of the facts, an appellate court would be unable to determine whether the statute was properly applied.

The majority opinion states that ''In the absence of a record showing that section 2344 of the Civil Code was involved on the trial any discussion of that section is inappropriate. (See *Town of St. Helena* v. *Merriam,* 171 Cal. 135, 137 [152 P. 299].)'' But the cited case is not helpful, and it is difficult to see how appellant, lacking a reporter's transcript, could present any stronger showing that section 2344 is involved than has been done by the presentation of the point in the

opening brief and the submission of a full clerk's transcript. All of the indications are that the statute is involved, rather than the contrary.

The majority opinion also states that "There was no showing made as to the nature of the testimony, and no indication that there was any merit in an appeal." This is contrary to the record. The pleadings show the nature of the case and the issues joined for trial. The clerk's transcript also shows that the trial court, as already stated, first gave defendants judgment on their cross-complaint for $39,267.31, but on denial of plaintiff's original motion for new trial, disallowed a $15,000 item. The very fact that the trial judge once changed his mind as to a substantial item, comprising more than one-third of the judgment, indicates that the case may have been a close one and that the points raised by the appeal, if not meritorious, are at least of sufficient substantiality to merit consideration.

In a memorandum upon denial of the original motion for new trial the trial judge stated that he was considering the "same primary question" as was presented on the trial, and as to that would not change his ruling, but that as to the item of $15,000, it appeared to be "in the nature of damage for a breach of contract and should not be allowed." The findings, conclusions, and judgment were modified accordingly. This ruling left the case in a state which was not satisfactory to either party, so that both plaintiff and defendant took separate appeals. This shows plainly that the trial court's adjudication was by no means so conclusively correct that the denial of a new trial under the conditions mentioned could be classed as a sound or reasonable exercise of discretion.

The denial of relief cannot be upheld upon any claim of injury to respondents. Respondents also appealed from the judgment. The duty to procure a transcript rested upon them just as much as it did upon appellant, and the same avenues of relief open to appellant were open to them. They might have taken steps to compel the reporter to act, or if they found the delay unreasonable, they could have sought an order terminating proceedings for preparation of the transcript. They did nothing, however, until appellant moved for a new trial under section 953e. They then noticed their own motion to terminate proceedings and opposed appellant's motion on the

ground of delay, inconvenience, and extra expense involved on a retrial, and the hazard that the personal recollections of witnesses might be less distinct.

They urge that appellant, in arguing for a new trial, cannot take advantage of their failure to compel the reporter to act. This is so. But neither are they in any position to oppose the new trial on the ground that they have been damaged by the delay, for they acquiesced in that delay. The law favors early disposition of appeals (*Clemmens* v. *Clemmens,* 13 Cal.2d 651 [57 P.2d 529]), but where both parties appeal, the duty is upon both to procure a transcript, and the appeal will not be dismissed for laches or want of prosecution where both are guilty. One cannot take advantage of the other to cut off a hearing on the merits. (*Tripp* v. *Duane,* 86 Cal. 149 [24 P. 867] ; 2 Hayne on New Trial, p. 1512, sec. 272.)

Therefore, inasmuch as the record here establishes that the incapacity of the reporter made it impossible for appellant to secure an adequate transcript, that there was no lack of diligence on his part, that his appeal presents substantial points meriting consideration, and that respondents are not entitled to claim that they have been injured by the delay, it is apparent that the denial of a new trial under section 953e constituted an abuse of discretion. This holding is in conformity with the trend of the law to be more liberal in upholding the granting of a new trial than the denial of one (39 Am.Jur. sec. 202, *supra*), and also with the legislative intent to liberalize the former limitations obtaining in this state, as evidenced by its 1943 amendment of 953e, enlarging that statute to embrace not only situations created by the "death or disability" of the reporter, but those created by "the loss or destruction, in whole or in substantial part," of his notes.

The order denying a new trial and terminating proceedings should be reversed and the cause should be remanded for a new trial.

Shenk, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied January 24, 1944. Shenk, J., Carter, J., and Schauer, J., voted for a rehearing.