[Civ. No. 14900.   Second Dist., Div. One.   Sept. 28, 1945.]

JOHN G. WEISBECKER, Respondent, v. ARLIE MARIAM WEISBECKER, Appellant.

Frank E. Carleton, Elmer P. Bromley and H. E. Lindersmith for Appellant.

Don Lake for Respondent.

THE COURT.—This is an appeal from an order denying defendant's motion for a new trial under section 953e of the Code of Civil Procedure, predicated upon the impossibility of obtaining a phonographic .report of testimony taken on the trial of a divorce case, due to the death of the stenographic reporter; and granting the plaintiff's motion to terminate proceedings to prepare a record on appeal from an interlocutory judgment of divorce entered in plaintiff's favor. "The sole question presented," in the language of appellant's opening brief, "is whether or not, under all the facts and circumstances appearing, the action of the lower court was an abuse of discretion. . . ."

On August 4, 1943, the plaintiff husband filed a divorce action to dissolve a marriage which had existed more than twenty-one years. The wife (appellant here) denied plaintiff's general allegations of cruelty and by cross-complaint sought separate maintenance, alleging that the husband used intoxicating liquor to excess and encouraged the wife in the use thereof. Intimate relations between the husband and another woman were also charged. The husband's answer to the cross-complaint averred a mutual condonation and that thereafter the wife had "reverted to her former acts and conduct and abandoned herself to the use of intoxicating liquor." The case was tried on February 18, 23 and 24, 1944, resulting in a finding that plaintiff husband's allegations were true and that the wife's allegations were untrue. The court found that the husband earned $200 per week but made no provision for support of the wife. Certain furniture in storage, and two Packard automobiles, were divided between the parties, and the wife was awarded U. S. war bonds in the face value of $400 which were already in her possession. The husband was ordered to pay additional attorney fees to the wife's counsel, in the amount of $300.

An interlocutory judgment of divorce, in accordance with the findings, was entered April 13, 1944, and on June 12, 1944, the defendant wife filed notice of appeal therefrom. On June 20, 1944, the wife's attorneys filed a "Notice to the clerk to prepare transcripts on appeal (Section 953a C. C. P.)," and this clerk's transcript was certified and filed in the county clerk's office on Sept. 1, 1944. The trial court made an order on June 23, 1944, requiring the husband to pay the charges for the preparation of a reporter's transcript to be used on appeal, and such payment was made by the hus-

band's attorney on June 29, 1944. On November 3, 1944, the wife's attorney filed a motion for new trial under Code of Civil Procedure, section 953e, alleging that J. M. Phillipowski, who had reported the divorce case, had died on or about September 14, 1944, and that the reporter's death was not discovered until about October 30, 1944. The affidavit of the wife's attorney, accompanying such motion for new trial, further recited that sometime after June 23, 1944, the reporter telephoned that he had received a check from plaintiff's attorney covering the estimated cost of the reporter's transcript including a copy for the wife's attorney, and "that he would go to work on it as soon as he could; . . . Affiant states that he received one other telephone call from the said J. M. Phillipowski other than the one above referred to, in which he apologized for the fact that the transcript had not been forwarded, and stated that he had been unable to get it out but that he would do so and that no rights of affiant's client were being prejudiced by the delay as he had secured the necessary extension of time from the Judge. Not hearing anything further in the matter, affiant states that he finally called Department 6 on October 30, and court being in session, asked that the reporter call him; thereafter he did receive a call from a reporter of a different name and was advised to talk to the Clerk of the Department, who advised him that J. M. Phillipowski had passed on in September." The affidavit further states that there were 19 exhibits offered and admitted in evidence and a great deal of testimony received at the three day trial, and that "it is utterly and entirely impossible to prepare an adequate record on appeal . . . without a transcription of the reporter's notes . . . and which transcription cannot . . . be obtained. Affiant further makes oath and says that there are grave questions involved as to the sufficiency of the evidence . . . to sustain the findings of the court upon material issues," specifying certain issues, and alleging that there was not only an absence of evidence to sustain the court's finding that the wife had no cause for divorce, but that there was "undisputed documentary evidence to the contrary," showing that plaintiff had lived with another woman, and that plaintiff had admitted that fact. An affidavit by plaintiff's attorney, in opposition to the motion for new trial, averred that defendant's counsel had not used due diligence to insure prompt filing of the reporter's

transcript, and that no order had been secured extending the time for filing such transcript.

Plaintiff's attorney at the same time filed a motion to terminate the proceedings to prepare the record for appeal, likewise setting up want of diligence and no order extending time. In opposition to the latter motion there is an affidavit by the reporter's transcriber, stating that on Sept. 12, 1944, the reporter Phillipowski had informed her that "he was going to dictate the Weisbecker case and that when she returned (from her vacation) on September 24, 1944, it would all be dictated and ready for her to transcribe," but that when she returned, the transcript had not been dictated. The transcriber's affidavit further stated that it was the reporter's practice to tell her that he had called the attorneys for both sides of a case and that they were agreeable to an extension of time, and that while she did not know what was done with respect to the Weisbecker case, "she is firmly of the belief and definitely of the opinion that all the attorneys in the Weisbecker case were contacted and that the delay in the preparation of the transcript was agreeable to all concerned." There is also an affidavit by the wife's attorney in which it is stated that there was another conversation with the reporter between the time of the two telephone calls hereinbfore mentioned, and that "said reporter called upon affiant at his office and had a conversation with affiant with reference to the transcript in this matter"; that in one of the telephone calls the reporter stated "he had secured 'the necessary extensions of time'," and that affiant did not question the matter "because of his understanding and belief that plaintiff's attorney was agreeable to the reporter's delay," and because plaintiff's attorney had, during the trial, cooperated in entering into other stipulations.

Among other matters of evidence set forth in said affidavit as tending to show that the judgment rendered was contrary to the evidence, is the fact that although plaintiff testified that he had never indulged excessively in intoxicating liquors, he also admitted writing a certain exhibit reading as follows: "I swear to God that I will not take a drink other than the pint that I now get today. J. G. W." The affidavit further alleges that there was other evidence of plaintiff's excessive indulgence in liquor, for example, a conviction of being drunk in a public place. Also mentioned in the affidavit are certain apartment house records and testimony of the house manager

indicating that the plaintiff had lived there with another woman between August 24, 1942, and September 24, 1943.

A minute order of December 12, 1944, recites that said motions "having been heretofore heard and submitted, the Court now orders the said motion for a new trial denied, and the motion to terminate proceedings on appeal granted." The record does not disclose what reasons motivated the judge in thus disposing of the motions in question. It is from this order that the present appeal is presented.

Code of Civil Procedure, section 953e, under which appellant's motion for a new trial was brought, provides that "When it shall be impossible to have the phonographic report of the trial transcribed by a stenographic reporter as provided by section 953a of this code because of the death or other disability of a reporter who participated as a stenographic reporter at the trial, the court or a judge thereof shall have the power to set aside and vacate the judgment, order or decree from which an appeal has been or is to be taken and to order a new trial of the action or proceeding." It is not contended by appellant that this section granted any absolute right to a new trial but merely that, under the circumstances, the denial of such new trial constituted an abuse of discretion.

That the denial of a new trial sought under section 953e, is "a special order made after final judgment and as such is appealable under Section 963 of the Code of Civil Procedure," was decided in *Conlin* v. *Coyne*, 15 Cal.App.2d 569, 571 [59 P.2d 884]. Upon a later appeal in the same case, *Conlin* v. *Coyne*, 19 Cal.App.2d 78 [64 P.2d 1123], it was held that the determination of such a motion rested in the discretion of the trial court, and that where it did not appear that defendants could not have prepared a proper record on appeal by means of a bill of exception, it could not be said that there was an abuse of discretion in denying a new trial. In the latter case it appeared that 655 folios of transcript had been transcribed before the reporter's death and were available for appellant's use, and the affidavits did not "disclose that a sufficient record could not have been made up without a complete transcript." However, at page 82 this court observed: "Had the plight of defendants been as desperate as was pictured by the sweeping generalities of the affidavits, and had the despairing views of their then counsel been substantiated by definite and positive statements

of fact, a denial of their motion for a new trial would have seemed most unjust.''

The case of *Caminetti* v. *Edward Brown & Sons,* 23 Cal.2d 511 [144 P.2d 570], has been commented upon by both appellant and respondent. In that case it was likewise held that ''the trial court has a wide discretion in passing on a motion for new trial under section 953e and that its action thereon must not be disturbed unless it is clearly shown that the trial court abused this discretion.'' Among other facts bearing upon the Caminetti decision is that ''after the reporter became permanently disabled there was an unexplained delay of over eight months before appellant served and filed his notice of intention to move for a new trial under the provisions of section 953e.'' These facts are not paralleled in the instant case, for the reporter appears to have been in good health prior to his sudden death on September 14, 1944; knowledge of the reporter's death came to appellant's attention on October 30, 1944, and the motion for new trial was made on November 3, 1944. Moreover, in the Caminetti case which was a four to three decision, the observations of Carter, J. in the dissenting opinion (page 522) are not inappropriate to the present discussion: ''The policy of the law is always to favor, wherever possible, a hearing of an appeal on the merits. . . . It is just as essential that an appellant be protected in his right to have his appeal heard on the merits as that a respondent be given the benefit of the presumptions and intendments supporting his judgment. Moreover, a retrial gives both parties another chance, whereas a denial of it absolutely forecloses the appellant. There can therefore be no question that section 953e has been properly construed to repose in the trial court a wide discretion. . . . But this discretion, although a 'wide' one, is not unlimited, arbitary, or unrestricted; . . . In passing upon [such] a motion . . . the court cannot be motivated by his personal inclination to see his own adjudication prevail over appellant's right to have it tested by appeal on the merits.''

It is said in *Sharon* v. *Sharon,* 75 Cal. 1, 48 [16 P. 345], that ''The discretion of the court below is a *legal* discretion, to be reasonably exercised. 'Abuse of discretion' . . . does not necessarily imply a wilful abuse, or intentional wrong. In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered.''

If trial courts become committed to the practice of summarily denying motions for new trial sought under the provisions of Code of Civil Procedure, section 953e, and if on appeal from such denial reviewing courts take the course of least resistance and affirm the order of denial because the matter is deemed one within the discretion of the trial court, the succor afforded by section 953e is as effectually denied the appellant as it would be if no such statute existed. Such cannot have been the intent of the legislators in enacting this provision.

In the present case, it is difficult to see wherein the appellant's attorney acted in any manner different from that which might reasonably be expected under the existing circumstances. The appeal was initiated in customary and timely manner; there were the usual telephonic conversations with the reporter concerning progress; the attorney was advised that no rights were being prejudiced and that the opposing attorney consented to the delay. As soon as knowledge of the reporter's sudden death came to the attorney's attention, the motion for new trial was filed. If then, the appellant has acted in a reasonable manner, and by the sudden death of the reporter has been denied the use of a stenographic transcript for use on appeal, it appears that the conditions described in Code of Civil Procedure, section 953e, are present and that under the circumstances here existing a denial of the new trial provided for in that section must be deemed unreasonable.

The respondent's principal contentions, as contained in a supplementary brief, are that a reporter's transcript was not needed, and that appellant exercised no diligence and has shown no good cause for the relief asked. In this connection it is asserted that "defendant took no steps to secure a record under the provisions of Rule 4(e) on appeal." Such rule provides that "If, without fault of the appellant, the reporter refuses or becomes unable or fails to transcribe all or any portion of the oral proceedings designated by the parties, the clerk shall mail notice" thereof to the parties, whereupon a motion may be made "for leave to prepare a settled statement of such portions of the oral proceedings." However, as pointed out by appellant, such rule provides that "this remedy is in addition to any remedy given by law," and therefore any failure to move for a settled statement should not be considered a penalizing circumstance in connec-

tion with appellant's motion for new trial under Code of Civil Procedure, section 953e. Furthermore, it is difficult to see how the appellant could prepare an adequate statement of the evidence, or indeed, under any appellate procedure, intelligently present her contention that the judgment was contrary to the evidence, without the aid of a transcript or some other equivalent data nonexistent in this case. It may also be noted that no notice of the reporter's death was given by the clerk as provided for in rule 4(e), which fact, as appellant observes, delayed action at least two weeks.

It is further stated in respondent's supplementary brief, that "Up to June 30, 1944, defendant could have proceeded for a bill of exceptions. Up to July 22, 1944, defendant could have proceeded for an agreed statement. Up to June 22, 1944, appellant could have proceeded for a settled statement. Up to June 24, 1944 appellant could have proceeded under Section 953a, C. C. P." All this, however, seems quite beside the point since on the dates mentioned the reporter was alive and apparently in good health, the reporter's costs had been paid on June 29, 1944, and without any extension of time the transcript was not due until July 29, 1944. Doubtless, appellant would have taken other and different steps had it been known that the reporter was about to die, but certainly no want of diligence or other penalizing circumstance can be predicated upon this lack of omniscience.

In this connection it may be noted that neither in the affidavits nor briefs filed, does respondent's attorney deny appellant's direct assertions that the reporter's delay was agreeable to the respondent; nor does such attorney anywhere state that the reporter did not communicate with him in reference to such delay. Such a waiver of the time requirement for preparing the transcript had been specifically asserted several times, namely in appellant's affidavits for a new trial and in opposition to the motion to terminate proceedings; also in the affidavit of the reporter's transcriber, and again in the appellant's opening brief. All this, however, brought forth no denial or even comment from respondent's attorney other than the cryptic statement: "Nor do unfounded innuendoes that the attorney for respondent consented to the delays aid appellant." In view of this situation it is not unreasonable to suppose that the delay in preparation of the transcript was with the tacit approval if not with the express consent of the respondent.

The remedial aspect of Code of Civil Procedure, section 953e, must not be lost sight of. This section was added to the code in 1931 for the purpose of changing the rule announced in *Diamond* v. *Superior Court,* 189 Cal. 732 [210 P. 36], which had held that a new trial could not be granted on account of the death of a court reporter since this was not then one of the statutory grounds for new trial. (See 25 Cal.L.Rev. 114.) Obviously, section 953e confers no absolute right to a new trial, and each case must stand upon its own merits. In the various cases cited by respondent where a new trial was held properly denied, there was either an unconscionable delay of many months or other facts quite divergent from those in the instant case, hence those cases cannot be considered authority govering the present decision. Where, as in the present case, an appellant has proceeded in the customary manner to perfect an appeal, has acted with reasonable promptness upon learning of the reporter's death, and the contentions of appellant are dependent upon voluminous evidence taken during a three day trial, the emergency situation contemplated by section 953e seems to be present. Under these circumstances a denial of the new trial provided for in such section exceeds the bounds of judicial reason and therefore must amount to an abuse of discretion. This is more particularly true where any delay in preparation of the transcript appears to have been waived or consented to by respondent's attorney.

As was said in *Litvinuk* v. *Litvinuk,* (Cal.) 156 P.2d 446, "an appellate court listens more readily to an appeal from an order denying relief than to one attacking a ruling granting relief . . . and such a policy is especially desirable in a divorce proceeding where the state is an interested party." In the case at bar a marriage existing for twenty-one years was dissolved at the behest of a husband who, as appellant maintains, was "shown to be at least as culpable as his mate and with the shocking consequence that she has no further legal claim upon him for support and maintenance. The shock is now intensified to an almost unbelievable degree by the action of the lower court in denying to her any further recourse to a judicial tribunal in her efforts to right what she considers to be a great wrong against her."

For the reasons heretofore noted, the order appealed from

is reversed and the court below is directed to grant a new trial under the provisions of section 953e of the Code of Civil Procedure.

A petition for a rehearing was denied October 24, 1945, and respondent's petition for a hearing by the Supreme Court was denied November 26, 1945.