[Civ. No. 15206.    Second Dist., Div. One.    Nov. 21, 1946.]

CLIFFORD G. DELAFIELD, Appellant, v. SEARLE AERO INDUSTRIES, INC. (a Corporation) et al., Respondents.

William Ellis Lady for Appellant.

James B. Tucker for Respondents.

WHITE, J.—This action was instituted in March, 1943, by the filing of a complaint for money for services rendered, in which complaint plaintiff alleged that the defendant corporation and the individual defendants had theretofore employed plaintiff as a "production co-ordinator" of the defendant Searle Aero Industries, Inc., and agreed to pay him 5 per cent of any and all sales made through the efforts of plaintiff, such compensation to be paid immediately upon delivery of the merchandise; that plaintiff sold $461,980.21 worth of merchandise, all of which had been delivered, and was entitled to the sum of $23,099.01; that $13,217.55 had been paid, leaving a balance due of $9,881.46. The defendants Marshall O. Searle and Gladys Searle Marco, by their joint answer, denied the agreement of employment alleged by plaintiff, admitted payment by defendant Vincent Anthony Marco to plaintiff of at least the sum of $13,217.55, and as a separate defense alleged the execution of an accord and satisfaction by the plaintiff and the defendant Vincent Anthony Marco on January 14, 1943. The defendant Searle Aero Industries, Inc., filed a similar answer, also pleading the accord and satisfaction. The answer of defendant Vincent Anthony Marco contained the same denials as the other answers, but did not plead the accord and satisfaction. By an amended cross-complaint Vincent Anthony Marco charged plaintiff with repudiation and breach of the accord and satisfaction and sought to recover the consideration paid by the cross-complainant thereunder.

Upon the first trial of the action, in November, 1943, the trial court granted a nonsuit. This was reversed on appeal (*Delafield* v. *Searle Aero Industries,* 66 Cal.App.2d 710 [152 P.2d 791]). At the same trial it appears from the minutes

that "pursuant to the statement made by the cross-complainant," the cross-complaint was dismissed.

At the second trial of the action plaintiff was permitted to file an amended and supplemental complaint in which the amount of commissions claimed by him was increased to $15,135.60. After submission of the cause upon the second trial, the court made findings of fact and conclusions of law and entered its judgment that plaintiff recover nothing from the individual defendants and that he recover from the defendant Searle Aero Industries, Inc., the sum of $1.00. From such judgment the present appeal is prosecuted.

The factual background of this litigation may be summarized as follows: Vincent A. Marco was "sales director" of the defendant Searle Aero Industries, Inc. In June, 1941, negotiations were in progress between Marco and plaintiff looking toward the employment of plaintiff in a sales capacity. Plaintiff delivered to Marco a letter, dated July 3, 1941, stating his understanding of their agreement was that he was to have a weekly drawing account of $50 and his commissions were to be "a minimum of 2½ per cent and a maximum of 8 per cent of the gross volume of annual sales." After further negotiation, however, plaintiff addressed another letter, dated July 9, 1941, to the defendant corporation, attention of Mr. Marco, the pertinent portions of which are as follows:

"I wish to confirm our understanding of July 3rd with reference to my employment with Searle Aero Industries, Inc. . . .

"Third, I shall make daily report wherein shall be included my work of the preceding day, names, telephone numbers and individuals whom I have seen, together with a report of discussions and possibilities. I am to have a drawing account of Fifty Dollars per week, which shall be charged against my commissions. My commissions shall be from 2½% to 8% of the gross volume of actual sales made by me, the amount of commissions to be determined by the Sales Director, Mr. Vincent A. Marco.

"I understand that I am being employed on an experimental basis and can continue on the arrangement above indicated for a period of four weeks, at which time if satisfactory to both parties we shall enter into a mutual agreement.

"It is understood that my authority is that of salesman with no specific power to bind or contract for the Searle Aero

Industries, Inc. unless with the written approval of Marshall Searle and Mr. Vincent A. Marco.

"There are no other verbal understandings other than herein written. . . ."

"The above is confirmed.

Searle Aero Industries, Inc.

By Vincent A. Marco, Sales, Director."

Under this arrangement, the plaintiff went to work. On December 20, 1941, Mr. Marco wrote plaintiff as follows:

"Confirming my conversation with you of recent date, please be advised as follows:

"That the records of Searle Aero Industries, Inc., and any and all subsidiary companies reflect that there has been sold to the Lockheed Aircraft Company, a gross volume of business totaling $23,911.27 up to and including December 20, 1941, on which amount you are to be paid a commission of two (2%) per cent.

"The records further indicate that all other business, exclusive of the Lockheed Aircraft Company business, up to and including December 20, 1941, sold by you, amounts to $38,-868.93, on which amount you are to be paid a commission of four (4%) per cent. . . ."

(Then follows a statement of account.)

"The above figures indicate a correct record of any and all commissions due you and advancements made to you to and including December 20, 1941, and is in accordance with our understanding and agreement."

Acceptance of this statement and a release was made in writing by the plaintiff.

Difficulties between the parties arising in the latter part of 1942 culminated in a conversation in December of that year, at which plaintiff presented to Mr. Marco some figures purporting to represent sales made by the corporation in 1942 upon which he claimed commissions. On January 14, 1943, the following accord and satisfaction was entered into between plaintiff and the defendant Vincent A. Marco;

"WHEREAS, during the year 1942 the undersigned, Cliff G. Delafield, was and still is employed by the undersigned, Vincent A. Marco, as a Sales Representative for the Searle Aero Industries, Inc., for whom said Vincent A. Marco was at all said times the Sales Director and from whom said Cliff G. Delafield's employment was directly obtained; and

"WHEREAS, in and during the year 1942 the said Cliff G. Delafield, as such sales representative, sold certain goods, wares and merchandise manufactured by said Searle Aero Industries, Inc., a California corporation, in the sum of Two Hundred Fifty Two Thousand Three Hundred Fifty and 90/100 ($252,350.90) Dollars, all of which have been delivered to the purchasers thereof and for which said Cliff G. Delafield was and is to receive a commission of five percent (5%) thereof, less advances of money heretofore made to his account in the sum of Fifty Two Hundred ($5200.00) Dollars, leaving a balance due said Cliff G. Delafield for his services as such sales representative for the year 1942 for goods, wares and merchandise sold and delivered, in the sum of Seven Thousand Four Hundred Seventeen and 55/100 ($7,417.55) Dollars; and

"WHEREAS, certain goods, wares and merchandise were also sold by said Cliff G. Delafield during said year 1942 which have not as yet been delivered to the purchasers thereof; and

"WHEREAS, certain sales of such goods, wares and merchandise have been or may be made by the said Cliff G. Delafield between January 1, 1943 and February 1, 1943; and

"WHEREAS, the undersigned parties hereto desire to have a full and complete Accord and Satisfaction, and a full and complete settlement of all matters arising from the employment of said Cliff G. Delafield as such sales representative by said Vincent A. Marco as said Sales Director for said Searle Aero Industries, Inc., and those interested therein;

"Now, THEREFORE, in consideration of the sum of Seven Thousand Four Hundred Seventeen and 55/100 ($7,417.55) Dollars, evidenced by check No. 4530 drawn for such amount upon the Citizens National Trust and Savings Bank (Hollywood-McCadden Branch), the receipt of which is hereby acknowledged by the undersigned Cliff G. Delafield, and which sum comprises the entire amount due said Cliff G. Delafield for commissions upon said goods, wares and merchandise by him sold during the year 1942 and by said Searle Aero Industries, Inc., a California corporation, delivered during said year; and in further consideration of the agreements herein contained upon the part of said Vincent A. Marco, the said Cliff G. Delafield does hereby release and discharge the said Vincent A. Marco, as an individual and as the Sales Director of said Searle Aero Industries, Inc., and also releases and discharges said Searle Aero Industries, Inc., a California cor-

poration, Marshall O. Searle and Mrs. Gladys M. Marco, from any and all claims on the part of said Cliff G. Delafield of all kinds and description, and all liabilities growing out of said Cliff G. Delafield's employment as heretofore set forth, except as expressly reserved and stated herein.

"The undersigned Vincent A. Marco, contracts and agrees that all sales of such goods, wares and merchandise made by the said Cliff G. Delafield during the year 1942 and up to February 1, 1943, which have not been delivered or cancelled, will upon delivery to the purchasers thereof account to said Cliff G. Delafield for his said five percent (5%) commission thereon.

"The undersigned Vincent A. Marco will, on or after February 1, 1943, submit a contract of employment to the said undersigned Cliff G. Delafield for his forthwith rejection or acceptance, it being understood that unless said contract is accepted by said Cliff G. Delafield his employment is terminated and at an end on February 1, 1943, which contract, among other things, will be for a period of one year, designate the territory and commissions and contain other provisions, including the right of the undersigned Vincent A. Marco, or Searle Aero Industries, Inc., to cancel and terminate the same at their option upon thirty (30) days' written notice, it being further understood that the employment of said Cliff G. Delafield has been and if re-employed, will be directly by the said Vincent A. Marco and not by the Searle Aero Industries, Inc.

"It is understood by the parties hereto and contracted and agreed by said Cliff G. Delafield that there are no other contracts or agreements between him, the said Cliff G. Delafield, and said Vincent A. Marco nor between him and any of the other parties mentioned herein.

"The said Cliff G. Delafield further certifies and states that he has examined and has personal knowledge of his said commission account mentioned herein and that the figures and amounts stated therein of the balance due and advances made him are true and correct and he hereby waives any further accounting thereof. . . ."

As to the terms of plaintiff's employment, the trial court found that the defendant Vincent A. Marco, as sales director of the defendant corporation and acting on its behalf, employed plaintiff as a salesman, and that his compensation was to be "based upon the gross sales actually made by the plain-

tiff of the products of the defendant corporation,'' the rate of such commission to be fixed by the sales director at not less than 2½ per cent and not more than 8 per cent of the amount of the sales actually made by the plaintiff; that plaintiff was paid in full for sales made up to December 20, 1941.

The court further found ''That between the 21st day of December, 1941, and the 31st day of December, 1942, the defendant corporation received orders for its products and sold the same in a total amount much greater than $252,350.90. That included in this total amount were sales made by the plaintiff in the year 1942 of products of the defendant corporation, which products were delivered by the 31st day of December, 1942, to the purchasers thereof, in the amount of $252,350.90. That said sales director fixed 5 per cent as the commission to be paid the plaintiff on the sales he had made which were so delivered, and the same was paid to him and accepted by him in full satisfaction of the commissions due him for all sales made by him during the year 1942 of the products of the defendant corporation which were delivered prior to January 1, 1943.''

The court further found: ''That products of the defendant corporation were sold by the plaintiff between the 21st day of December, 1941, and the 31st day of December, 1942, which were not delivered until after the 31st day of December, 1942, and said Sales Director did fix the rate of 5 per cent as the rate of the commission to be paid the plaintiff for said sales, but that there is no evidence of the amount of such sales made by the plaintiff, and it is therefore found that the plaintiff sold products of the defendant corporation between the 21st day of December, 1941, and the 31st day of December, 1942, which were delivered after the 31st day of December, 1942, in the amount of twenty dollars. That no commission has been paid. . . . That the evidence does not disclose whether or not the plaintiff made any sales of the products of the defendant corporation at any time during the year 1943, and hence it is found that the plaintiff made no sales during said year.''

As conclusions of law, the court found that the individual defendants ''have breached no legal duty they owed to the plaintiff'' and were entitled to a judgment that as to them plaintiff take nothing; that the defendant corporation ''was under the legal duty of paying the plaintiff a commission at the rate of 5 per cent based upon sales of its products which

were made by him prior to December 31 of the year 1942, but which were not delivered until after that date, but that, in the absence of any evidence from which the amount of such sales may be ascertained, the plaintiff is entitled to judgment against the defendant corporation in a nominal sum only; that is, in the sum of one dollar.''

▮ Appellant's first ground for reversal is that under the undisputed evidence he was entitled to a judgment for $15,135.60. Appellant calls attention to his own testimony that he was known as a ''co-ordinator''; that he made regular calls on various airplane builders, particularly in Southern California, from which builders defendant corporation received orders for merchandise; also that the evidence of all parties was to the effect that it was the practice for the builders to ask various manufacturers for bids and then determine which manufacturer should get the order; that such orders were usually sent directly to the manufacturer. Mr. Searle testified that no orders were given directly to Mr. Delafield, so far as he kenw. In view of this, it is argued, it was not possible for plaintiff to obtain the orders himself, and therefore he was entitled to a commission on all orders from the airplane builders upon whom he had been calling and whom he had been ''servicing.'' In this connection, appellant also states that he relies not only on his own testimony but ''more heavily on the testimony of Mr. Marshall O. Searle.'' The testimony quoted by appellant was to the effect that he did not check the statement of approximately $252,000 which Mr. Delafield presented at the time of the accord and satisfaction; that he believed the statement was gotten through the plant; that he assumed someone had checked it. Mr. Searle further testified:

''Q. . . . You testified here for the year's business ending December 31, 1942, you made some settlement with Mr. Marco? A. Yes.

''Q. Was that settlement that you made with him based upon the same statement that Mr. Delafield prepared? A. No. . . . Mr. Marco's arrangement with the company is on the gross business and not on that territory. . . .

''Q. But Delafield's is on the territory, on that territory?

''A. On certain accounts, yes, sir.

''Q. The accounts he went around and visited?

''A. Yes.

. . .

"A. Do you mean that Mr. Delafield called on Consolidated?

"Q. That was one of his accounts?

"A. Yes.

"Q. That was in his territory?

"A. *I do not mean he has the exclusive—*

"Q. Just a minute, please. But, that is one of the accounts, the Consolidated Aircraft?

"A. That is right; he serviced them."

The witness then named about fifteen firms in Southern California upon whom Mr. Delafield called.

Appellant cites authorities holding, in substance, that testimony which is not inherently improbable and is not impeached or contradicted by other evidence should be accepted as true; that such unimpeached testimony may not be arbitrarily disregarded by the trial court, and that therefore it was the plain duty of the trial court to accept the testimony of Mr. Searle to the effect that plaintiff was to be paid a commission on all orders from the airplane builders upon whom he called.

The trial court, however, found that plaintiff was entitled to commissions only upon sales actually made by him. There is substantial evidence to support this finding, the testimony of defendant Marco and the uncontradicted evidence of the documents hereinbefore set forth, containing the phrases, "actual sales made by me," "business . . . sold by you," and, in the accord and satisfaction, the agreement to pay a 5 per cent commission on future delivery "upon all sales of such goods, wares and merchandise made by the said Cliff G. Delafield . . . which have not been delivered or cancelled."

We are persuaded it would be a fair summary of the evidence to say that the parties at no time came to a specific agreement upon which an accounting could be based—that they at no time arrived at an understanding as to what the basis of commission was to be. On the contrary, the evidence would support only a finding that so far as commissions were concerned the plaintiff, Mr. Delafield, was bound by the decision of the defendant Mr. Marco, who was invested with authority to determine not only the amount of commissions to be paid but also whether a particular salesman had earned any commission. Nowhere in the testimony of any party or other witness is there anything to disclose just how a salesman who claimed a commission was to prove his right thereto. Nothing in the evidence disclosed any form of record-keeping that would protect a salesman should his claims be contested by

the sales director, Mr. Marco. The general theory of operation over a long period of time seems to have been that if a salesman made a sufficient showing of diligence upon a particular project he had earned a commission (subject to Mr. Marco's views as to the amount). If plaintiff chose to put up with such an arrangement, no good reason appears why he should now be permitted to complain. He was at liberty to resign long before he secured the accord and satisfaction. It is not the function of a court to remake a contract entered into by competent parties.

Some of the foregoing observations apply equally well to appellant's second contention—that the trial court erred in denying appellant's request that a referee be appointed to examine the records of the defendant corporation and determine therefrom what proportion of its orders taken in 1942 and delivered subsequent to the accord and satisfaction were orders upon which plaintiff was entitled, under the accord and satisfaction, to a commission. This contention is without merit. The learned trial judge was ready at all times to receive any evidence to support plaintiff's claim of a commission as to any specific order. No such evidence was offered. There being no evidence, there was nothing for a referee or auditor to examine. Moreover, the matter was one calling for the discretion of the trial judge. (22 Cal.Jur. 689.) In the instant case the trial judge examined all the evidence and concluded that no useful purpose would be served by a reference. In this determination, we are convinced, he did not err.

Finally, appellant urges that a new trial should have been granted under section 953e of the Code of Civil Procedure by reason of the death of the reporter before the completion of the transcript. It is settled that the granting of a new trial upon this ground is a matter resting in the sound discretion of the trial court, and its action will not be disturbed unless an abuse of this discretion clearly appears. (*Smith* v. *Orange Belt Supply Co.*, 58 Cal.App.2d 848 [137 P.2d 845]; *Conlin* v. *Coyne,* 19 Cal.App.2d 78 [64 P.2d 1123].) Before his death the reporter furnished 460 pages of transcript, which included all of plaintiff's case in chief. These 460 pages included plaintiff's cross-examination of the defendants Marshall O. Searle and Vincent A. Marco under section 2055 of the Code of Civil Procedure. The balance of the record on appeal, consisting of defendants' evidence and some rebuttal by plaintiff, was made up in the form of a settled statement based upon partial tran-

scriptions of the shorthand notes by other reporters and notes taken by the trial judge. In the circumstances of the present case no prejudice has resulted to appellant; in fact, appellant has made no attempt to point out wherein he has been prejudiced in the presentation of his appeal. The case of *Weisbecker* v. *Weisbecker,* 71 Cal.App.2d 41 [161 P.2d 990], cited by appellant, presented an entirely different situation, in which no transcript at all was available.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied December 11, 1946, and appellant's petition for a hearing by the Supreme Court was denied January 16, 1947.